Joseph P. KAUFFMAN, Appellant,

v.

SECRETARY OF THE AIR FORCE,
Appellee.

No. 21227.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 6, 1968.

Decided June 26, 1969.

Mr. David Rein, Washington, D. C., with whom Mr. Leonard Boudin, Washington, D. C., was on the brief, for appellant.

Mr. Garvin L. Oliver, Atty., Department of Justice, for appellee. Asst. Atty. Gen. J. Walter Yeagley, Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, Kevin T. Maroney

and Robert L. Keuch, Attys., Department of Justice, were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and TAMM and ROBINSON, Circuit

EDGERTON, Senior Circuit Judge:

Appellant brought suit in the District Court to have his court-martial conviction and sentence declared void on the ground that they rested upon violations of his constitutional rights. He also asked for restoration to active duty with full rank, and the seniority and allowances to which he would have been entitled had he not been discharged, resting his claim on the record made in the court-martial proceeding. The case was decided upon cross-motions for summary judgment and the government's alternative motion to dismiss for want of jurisdiction in the District Court. The District Court held that it had jurisdiction to entertain an action for declaratory relief attacking a court-martial conviction, but granted summary judgment for the government on the ground that the issues raised by appellant were fully and fairly considered in the military proceedings.

Three questions are presented: (1) whether the District Court has jurisdiction to entertain a collateral attack on a military judgment not presented in the form of a petition for writ of habeas corpus; (2) the proper standard for review of military judgments by civilian courts; and (3) the validity of appellant's conviction and sentence. We agree that the District Court had jurisdiction but find that it applied an unduly limited standard for review of alleged constitutional errors. We think the scope of review of military judgments should be the same as that in habeas corpus review of state or federal convictions, and constitutional requirements should be qualified by the special conditions of the military only where these are shown to require a different rule. Imposing this standard of review, we nonetheless agree that appellant's

conviction and sentence were valid. Accordingly, we affirm the judgment of the District Court in favor of the government.

I

FACTS AND MILITARY PROCEEDINGS

Appellant was charged with violations of the Uniform Code of Military Justice, 10 U.S.C. § 801 et seq., growing out of certain contacts between appellant and East German officials. In September 1960, appellant was a captain in the United States Air Force, authorized to travel in Europe for thirty days before reporting to his next duty station at Castle Air Force Base, California. While traveling by train from Hamburg to West Berlin, through East Germany, he was removed from the train, detained, and questioned by East German authorities. He was released to go to West Berlin, "giving his word" that he would return to East Berlin. He returned on October 1, 2, and 3 for social entertainment and further questioning sessions with the East Germans.

Appellant was asked to sign an agreement to provide information to the East German Political Secret Service. He refused. The East Germans wrote the name and address of Klara Weiss, a resident of West Berlin, in his pocket notebook as a cover address for any further communications. He left West Berlin for California on October 4, 1960.

In June of 1961, a defector from East Germany named Gunter Maennel reported to American authorities that he had participated in the interrogation of appellant. An investigation was initiated by the Air Force Office of Special Investigations (OSI), resorting to means which the Court of Military Appeals described as "massive and deliberate violations of appellant's constitutional rights." Appellant was sent to another Air Force Base on temporary duty to enable three OSI agents to break into his off-base residence on four occasions to search the premises. These agents

swore that nothing in the way of evidence was found in these four searches. Another OSI agent obtained a warrant for a fifth search of appellant's residence, claiming that the affidavit was based solely upon evidence obtained in Europe. The fifth search was apparently more efficient, for the agent seized the notebook containing Klara Weiss' name and address, located in appellant's top dresser drawer, and photographed other documents establishing his presence in Germany at the time of the alleged interrogations by the East Germans.

In addition, while appellant was in custody and confined to the base hospital, OSI agents monitored his hospital room and eavesdropped on his conversations, including those with his attorney. This interference with his right to counsel was condemned in a resolution adopted by the Board of Governors of the State Bar of California.

Appellant was then transferred, over his objection, to Weisbaden Air Base, Germany, for pre-trial investigation and trial. He claimed that this transfer was prejudicial because of tension in the area due to the erection of the Berlin Wall, and because counsel of his choice was unable to leave his practice for the period required for the proceedings in Germany. He was, however, represented by distinguished counsel who had served as a judge on the Court of Military Appeals and as a member of the Supreme Court of Utah.

Four charges were lodged against appellant alleging violation of various articles of the Uniform Code of Military Justice. These charges were:

Charge I: Violation of Article 81, 10 U.S.C. § 881; conspiracy. Specification: Conspiracy with persons known to be members of the East German Secret Service to communicate information relating to the national defense of the United States.

Charge II: Violation of Article 92, 10 U.S.C. § 892; failure to obey order or regulation. Specification 1: Travel through East Germany without proper orders. (Attachment 5, Air Force Manual 35–22.) Specification 2: Failure to report attempts by persons known to be representatives of the Soviet Union and East Germany to secure information contrary to the security and best interests of the United States and to cultivate him socially. (Paragraph 1, Air Force Regulation 205–57, dated 2 July 1959.)

Charge III: Violation of Article 133, 10 U.S.C. § 933; conduct unbecoming an officer. Specification: Agreement to return to East Germany in 1963 for training by the Secret Service and to obtain and communicate certain information.

Charge IV: Violation of Article 134, 10 U.S.C. § 934; conduct tending to discredit the armed forces. Specification: Communication to Gunter Maennel of information relating to the defense of the United States.

The court martial took place on April 10–18, 1962. Appellant was convicted as charged, except for Specification 1 of Charge II regarding travel orders, which was dismissed before trial. He was sentenced to dismissal from the Service,[1] forfeiture of all pay and allowances and confinement at hard labor for 20 years.

The record was reviewed and approved by the convening authority and forwarded to the Judge Advocate General of the Air Force for review by a Board of Review. The Board set aside the finding of guilt as to Charge IV, communication of information to Maennel, as based on hearsay, and reduced appellant's term of confinement to a maximum of 10 years.

On appeal the Court of Military Appeals reversed the convictions on the remaining substantive espionage Charges I and III on the ground that the charges

---

1. Dismissal of officers is the equivalent of dishonorable discharge of enlisted men.

were founded on hearsay[2] and that no overt act of conspiracy had been shown. United States v. Kauffman, 14 U.S.C.M.A. 283, 34 C.M.R. 63 (1963). Conviction on Charge II, failure to report contacts with agents of unfriendly powers, was affirmed upon a finding that it was not affected by the constitutional and non-constitutional errors alleged. The case was referred back to the Judge Advocate General with instructions that a rehearing on sentence could be ordered before the original Board of Review or another Board of Review could be convened to reassess the sentence.

The original Board held a hearing on the matter of resentencing, and reduced the term of confinement at hard labor to two years. Appellant's petition for review of this action was denied by the Court of Military Appeals. On June 28, 1964, the reassessed sentence was approved by the Secretary of the Air Force, except that an administrative discharge under other than honorable conditions was substituted for the dismissal from service. By that time, appellant had served his two years of confinement. Total forfeiture of pay and allowances remained in effect.

## II

### JURISDICTION

Article 76 of the Uniform Code of Military Justice, 10 U.S.C. § 876, provides that military review of court-martial convictions shall be "final and conclusive" and "binding upon all * * * courts * * * of the United States." The legislative history of the finality clause demonstrates that Congress intended to preserve the collateral remedy of habeas corpus in civilian courts, S. Rep.No. 486, 81st Cong., 1st Sess. 32

(1949); H.Rep.No. 491, 81st Cong., 1st Sess. 35 (1949); and the Supreme Court has held that review by this route in civilian courts remains available. Gusik v. Schilder, 340 U.S. 128, 132–133, 71 S. Ct. 149, 95 L.Ed. 146 (1950); Burns v. Wilson, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). The question presented in this case is whether habeas corpus to secure release from confinement is the exclusive collateral remedy, so that any jurisdictional attack on a court-martial judgment in civilian courts is barred if the plaintiff is no longer in custody.

We think that confinement is not a jurisdictional requirement for collateral review of military judgments in civilian courts. For many years, the Court of Claims has entertained suits for back pay by servicemen not in custody who based their claims on allegations that their courts-martial convictions were invalid. See, e.g., Runkle v. United States, 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887); Shaw v. United States, 357 F.2d 949, ·174 Ct.Cl. 899 (1966). Other courts have held that the remedy of mandamus to require administrative correction of military records pursuant to 10 U.S.C. § 1552[3] is available to a serviceman seeking to void a punitive sentence imposed by a court martial in violation of his constitutional rights. Ashe v. McNamara, 355 F.2d 277 (1st Cir.1965); Smith v. McNamara, 395 F.2d 896 (10th Cir.1968). And in Gallagher v. Quinn, 124 U.S. App.D.C. 172, 363 F.2d 301, cert. denied, 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966), this court held that the District Court had jurisdiction of a serviceman's suit for a mandatory injunction and other relief attacking his court mar-

---

2. The defector's testimony concerning appellant's alleged cooperation was held insufficient as a matter of law to support the charges on the hearsay ground that the interpreter who relayed appellant's alleged statements was not his agent or co-conspirator.

3. Section 1552(a) of 10 U.S.C. provides in part:

The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.

tial, where he claimed that the statute denying him a right of review by the Court of Military Appeals was unconstitutional, even though the petitioner was not in custody.[4]

We reserved decision on the jurisdictional issue in this case pending the decision of the Supreme Court in United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). There the Court of Claims had granted back pay to a serviceman convicted by a court martial, but not in custody, and cited Gallagher v. Quinn, supra, in support of the following jurisdictional holding:

> There is no adequate reason for looking to habeas corpus alone, or for thinking that Congress limited its exception from "finality" to that specific proceeding. Liberty is of course important, but so are a man's career, his livelihood, his rights as a veteran, his status as a convicted criminal, and his reputation. To deny collateral attack to one not in confinement—the consequence of saying that habeas corpus is the only remedy—would be to deny the possibility of review by a constitutional court and ultimately by the Supreme Court, of the constitutional claims of servicemen like plaintiff who have not been sentenced to jail or who have been released. [377 F.2d 586, 592 (1967).]

The Supreme Court reversed the judgment of the Court of Claims on the merits without passing on the validity of the jurisdictional holding. After stating the Court of Claims' position on jurisdiction,[5] and noting the variety of views on the issue of non-habeas corpus collateral relief, the Court declined to reach the question, concluding that "* * * even if we assume arguendo that a collateral attack on a court-martial judgment may be made in the Court of Claims through a back-pay suit alleging a 'constitutional' defect in the military decision, these present cases on their facts do not rise to that level." 393 U.S. at 351–352, 89 S.Ct. at 531.

The errors alleged in this case do rise to a constitutional level, and we follow Gallagher in holding that the District Court had jurisdiction to review appellant's conviction. The Gallagher court reasoned that the serviceman need not be in prison, for the continuing disabilities attending a dishonorable discharge provided a case or controversy, and "the right to due process would be lost if one deprived of it could not obtain redress because not in confinement." 124 U.S. App.D.C. at 175, 363 F.2d at 304. Both elements of this reasoning are sound. First, the deprivation of liberty under an invalid conviction is a grievous injury, but a military discharge under other than honorable conditions imposes a lifelong disability of greater consequence for persons unlawfully convicted by courts martial. "In terms of its effects on reputation, the stigma experienced by the recipient of a discharge under other than honorable conditions is very akin to the concept of infamy. * * *" Everett, Military Administrative Discharges —The Pendulum Swings, 1966 Duke L. J. 41, 50.

Second, the enactment of the Uniform Code of Military Justice and the establishment of the Court of Military Appeals made up of civilian judges to enforce its procedural guarantees are

---

4. Other opinions of this court have suggested that the decisions of courts martial are open to collateral attack other than by a habeas corpus proceeding. See Shaw v. United States, 93 U.S.App.D.C. 300, 302, 209 F.2d 811, 813 (1954); and Levy v. Corcoran, 128 U.S.App.D.C. 388, 389 F. 2d 929, cert. denied, 389 U.S. 960, 88 S. Ct. 337, 19 L.Ed.2d 369 (1967).

5. The Court's statement of the Court of Claims' holding includes a Delphic reference to the case of Ashe v. McNamara, supra, which may perhaps be taken as approval of the mandamus remedy:

> * * * the Court of Claims * * * rejected the view that the adoption of Article 76 [finality] introduced a new regime and that 10 U.S.C. § 1552 which provides a remedy to correct a military record in order "to remove an injustice," see Ashe v. McNamara, 355 F.2d 277, is apart from habeas corpus, the exclusive remedy. [393 U.S. at 351, 89 S.Ct. at 531.]

proof of Congress' concern that the system of military justice afford the maximum protection to the rights of servicemen. The writ of habeas corpus has played a unique role in the system by affording the basis for ultimate Supreme Court review of constitutional errors. But for reasons related to the efficiency of the services, the military may prefer to discharge an offender without imposing a term of imprisonment, thus removing the traditional predicate for habeas corpus review. Everett, *op. cit.*, 1966 Duke L.J. at 96; and see United States v. Augenblick, *supra*, 393 U.S. at 350, 89 S.Ct. 528. To hold that collateral review is contingent on confinement in every case would arbitrarily condition the serviceman's access to civilian review of constitutional errors upon a factor unrelated to the gravity of the offense, the punishment, and the violations of the serviceman's rights.

Finally, the result of requiring confinement as a condition of servicemen's access to collateral remedies would be especially arbitrary in a case such as this. Appellant lost his opportunity to obtain civilian review by writ of habeas corpus because he had completed his two-year term of confinement at hard labor before he had exhausted his military remedies. In Carafas v. La Vallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the Supreme Court held that a civilian petitioner was entitled to review of his criminal conviction by writ of habeas corpus even though he was free by the time his petition came up for review. It stated that the disabilities of a criminal conviction kept the case from being moot and that collateral relief should not be denied because of exhaustion requirements and delays in court processes. If the custody requirement may be relaxed in habeas corpus review of state convictions, subject to direct review of violations of federal rights, 28 U.S.C. § 1257, it may surely be dispensed with in review of military judgments not otherwise reviewable by a constitutional court.

## III

## SCOPE OF REVIEW

■ The government contends that even if civilian courts have jurisdiction to entertain collateral attacks on military judgments not presented upon petition for habeas corpus, the scope of review is narrower than the scope of collateral review of state and federal convictions. First, it contends that in collateral review of military judgments courts may inquire into only the traditional elements of jurisdiction—whether the court martial was properly constituted, and had jurisdiction of the person and the offense and the power to impose the sentence—and not the constitutional errors held to oust courts of jurisdiction since Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Second, the government asserts that even if collateral review extends to constitutional errors, the duty of the civilian court is done if it finds that the military court has considered the serviceman's constitutional claims, even if its conclusions are erroneous by prevailing Supreme Court standards. We find no support for the first proposition, and no persuasive authority for the second.

In Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508, rehearing denied, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363 (1953), the leading case on the scope of review, only one Justice was willing to affirm dismissal of a serviceman's petition for habeas corpus upon the narrow jurisdictional test. Upon the denial of rehearing in *Burns*, Justice Frankfurter wrote an opinion asking that the decision be clarified, and expressing doubt "that a conviction by a constitutional court which lacked due process is open to attack by habeas corpus while an identically defective conviction when rendered by an *ad hoc* military tribunal is invulnerable." 346 U.S. at 851, 74 S.Ct. at 7. We see no argument for such a distinction. Deference to the peculiar needs of the military does not require denying servicemen the contemporary reach of the writ.

The argument that military judgments are subject to less exacting scrutiny on collateral review than state or federal judgments relies upon the statement of a plurality of the Court in Burns v. Wilson, *supra*, that "when a military decision has dealt *fully and fairly* with an allegation raised in that application [for a writ of habeas corpus], it is not open to a federal civil court to grant the writ simply to reevaluate the evidence." 346 U.S. at 142, 73 S.Ct. at 1049. (Emphasis supplied.) The Supreme Court has never clarified the standard of full and fair consideration, and it has meant many things to many courts. One commentator has observed that in following *Burns*, "a court may simply and summarily dismiss a petition upon the ground that the military did not refuse to consider its allegations or it may, with equal ease or upon the same authority, stress the requirement that military consideration shall have been full and fair." Bishop, Civilian Judges and Military Justice, 61 Col.L.Rev. 40, 47 (1961).

We think it is the better view that the principal opinion in *Burns* did not apply a standard of review different from that currently imposed in habeas corpus review of state convictions. The Court's denial of relief on the merits of the serviceman's claims can be explained as a decision based upon deference to military findings of fact, similar to the general non-reviewability of state factual findings prevailing at the time. *But cf.* Townsend v. Sain, 372 U.S. 293, 311, 83 S.Ct. 745, 9 L.Ed.2d 770 (1962). Note, Servicemen in Civilian Courts, 76 Yale L.J. 380, 392–395 (1966). Courts taking this view have interpreted *Burns* to require review of military rulings on constitutional issues for fairness. *See, e. g.*, Application of Stapley, 246 F.Supp.

316 (D.Utah 1965); Gibbs v. Blackwell, 354 F.2d 469 (5th Cir.1965).

The District Court below concluded that since the Court of Military Appeals gave thorough consideration to appellant's constitutional claims, its consideration was full and fair. It did not review the constitutional rulings of the Court of Military Appeals and find them correct by prevailing Supreme Court standards. This was error. We hold that the test of fairness requires that military rulings on constitutional issues conform to Supreme Court standards, unless it is shown that conditions peculiar to military life require a different rule.[6] The military establishment is not a foreign jurisdiction; it is a specialized one. The wholesale exclusion of constitutional errors from civilian review and the perfunctory review of servicemen's remaining claims urged by the government are limitations with no rational relation to the military circumstances which may qualify constitutional requirements. The benefits of collateral review of military judgments are lost if civilian courts apply a vague and watered-down standard of full and fair consideration that fails, on the one hand, to protect the rights of servicemen, and, on the other, to articulate and defend the needs of the services as they affect those rights.

## IV

### THE MERITS

Appellant contends that his conviction for failure to report contacts with agents of unfriendly powers was obtained through the use of illegally seized evidence, and that the imposition of punishment for failure to report contacts, and the requirement that he testify on this charge on cross-examination each

---

6. For example, it has been pointed out that what might be an illegal search by a police officer may be a routine inspection in the services, and that here the balancing of interests will be affected by the military context. Note, Servicemen in Civilian Courts, 76 Yale L.J. at 399. Similarly, the government has suggested elsewhere that military rank has its penalties as well as its privileges, and that conduct which is excusable for an enlisted man may be punishable for an officer. Brief for the Government at 38, United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).

violated his Fifth Amendment privilege against self-incrimination.

### A. Fourth Amendment Claim

█ The principal opinion of the Court of Military Appeals apparently concluded and the District Court held that the notebook containing the name of Klara Weiss, the alleged contact for further communications between appellant and the East Germans, was illegally seized and admitted into evidence. We agree. The investigating agent's testimony that the notebook was overlooked in four illegal searches of appellant's premises, but suddenly materialized in his top dresser drawer during the fifth search conducted pursuant to a warrant was hardly credible. The principal opinion of the Court of Military Appeals held, however, that the conviction for failure to report contacts was untainted because it was supported by independent, untainted evidence. Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L. Ed.2d 384 (1962).

It is not clear what the Court counted as independent evidence. Evidence to support the charge of failure to report consisted of the defector's testimony to the contacts, the Air Force showing that no report had been filed, and appellant's own testimony. The critical question, as stated by the concurring opinion, is whether appellant would have testified had the notebook not been in evidence. Had he not testified, he would not have confirmed the contacts and admitted on cross-examination that he did not report them.

A court might well conclude that a conviction for failure to report contacts based upon the defector's testimony, the showing of no report, and the notebook would be constitutionally infirm, because there is a possibility that the fact-finder might not have believed the defector without the physical evidence of the contacts. But it is quite another matter to conclude that appellant's own testimony was tainted because he responded to evidence of which the notebook was only a part. The question is whether appel-

lant's testimony was impelled by the need to explain away the notebook. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). Unless his testimony was so induced, the notebook could not have contributed to his conviction on the reporting charge and its admission was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967). In *Harrison*, the Supreme Court held that testimony, offered by the defendant at his first trial to counter illegally obtained confessions, was inadmissible at the new trial for the same offense. The Court stressed the fact that defense counsel said in his opening statement that the defendant would not testify, and that he decided to do so only after the confessions were admitted into evidence. 392 U.S. at 225, 88 S.Ct. 2008.

In this case we find nothing in the record to show or suggest that appellant's decision to testify was motivated by an unfavorable ruling on the notebook, or was a strategy adopted in anticipation of such a ruling. It seems clear that Maennel's testimony was the determining factor. Defense counsel prefaced appellant's testimony with the statement that, despite the presumption of innocence, he was going to "tell his side of the story," except that he would not testify on the reporting charge. Defense counsel hoped that appellant would be able to avoid testimony on the reporting charge, and appellant attacks the incriminating admission on Fifth Amendment grounds considered below. We think that confronted with Maennel's espionage charges, and expecting to avoid harming appellant's case on the reporting charge, defense counsel must have calculated that with or without the notebook, appellant would probably have been convicted of all charges if he testified, and almost surely would have been convicted of espionage if he did not. Under these circumstances, appellant's testimony was obtained " 'by means sufficiently distinguishable' " from the illegal seizure of the notebook to be free of

taint, Harrison v. United States, *supra* at 226, 88 S.Ct. 2008, and his testimony concerning the contacts eliminated any prejudice from the admission of the notebook into evidence.

### B. Fifth Amendment Claims

#### 1. The Regulation

■ Appellant contends that the regulation requiring Air Force members to report contacts with agents of unfriendly powers [7] is unconstitutional both in its general operation and as applied to him. The regulation requires that Air Force personnel report overtures to themselves and also report on each other. The Court of Military Appeals analogized it to laws requiring drivers to report automobile accidents and stated that the Air Force has a legitimate interest in being informed of efforts to subvert its personnel.

We think the regulation is valid. Contacts with agents of unfriendly powers are not unlawful, unless the serviceman cooperates. The regulation lacks the "direct and unmistakable consequence of incriminating" those who comply with it. Marchetti v. United States, 390 U.S. 39, 49, 88 S.Ct. 697, 703, 19 L. Ed.2d 889 (1968); see also Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1962).

■ Appellant further asserts that, even if the regulation is valid, persons whose reports *would* tend to incriminate them cannot be punished for failure to report. He states that in his case such

a report would have indicated that he had travelled through East Germany without proper orders, a charge dismissed before trial for reasons that do not appear in the record. His argument is that (1) no one can be compelled "[to] furnish a link in the chain of evidence" needed to prosecute for a crime, Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); and (2) no punishment can be imposed upon an individual for exercising his privilege. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed. 2d 562 (1967); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).

The cases cited by appellant are inapposite. None involved a claim of privilege to withhold records or reports required for a valid, non-incriminating purpose, and there are different considerations affecting the scope of the privilege in such cases. *See* Spevack v. Klein, *supra* at 516–517, 520, 87 S.Ct. 625. As the principal opinion of the Court of Military Appeals observed, it would be appropriate to require the government to elect between obtaining required reports and using them as evidence in a prosecution. A further requirement that the prosecution be based on fully independent information might result in de facto immunity. *See* Marchetti v. United States, *supra* at 58–59, 88 S.Ct. 697. But even assuming that incriminating disclosures in required reports are properly subject to such use restrictions, there is no authority for a blanket privilege to withhold them in the first place. *Cf.* Shapiro v.

---

7. Air Force Regulation 205–227 at issue provides, in pertinent part, as follows:

FOREIGN INTELLIGENCE COLLECTION EFFORTS

* * * * *

1. . . . Any Air Force member, civilian or military, with knowledge of the following will notify his superior or commanding officer immediately upon learning of any:

a. Attempts to induce any individual to reveal information contrary to the security and best interests of the United States.

* * * * *

c. Attempts by representatives of foreign governments, with interest currently inimical to the United States, to cultivate socially or otherwise, members of the USAF.

* * * * *

3. . . . In absence of overriding circumstances, no action will be taken to disturb existing relationships between the parties involved in the activities reported, until further instructions are received.

* * * * *

United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948).

### 2. Cross-examination

██ °Appellant claims that his privilege was violated when he was compelled to answer on cross-examination whether or not he had filed the report. Section 149(b) (1) of the Manual for Court Martial (1951) permits a defendant to testify selectively to the charges against him. Appellant's counsel stated that appellant would not testify on the reporting charge, but such a declaration is not controlling if the defendant's testimony extends to matters about which he wished to remain silent. The Court of Military Appeals held that the question was permissible because appellant had testified to the substance of the reporting charge, and also because failure to file the report was a fact bearing on the credibility of his denial of complicity with the East Germans. While we are not persuaded that he testified squarely on the question of whether he filed a report, the facts of these offenses were so intertwined that the question concerning the report was directly relevant to appellant's credibility in testifying to the other offenses. The ruling of the Court of Military Appeals was in accord with its own precedents interpreting the special privilege of selective testimony, United States v. Kelly, 7 U.S.C.M.A. 218, 22 C. M.R. 8 (1956), and is consistent with the rule of federal jurisdictions permitting cross-examination of criminal defendants on all matters relevant to an offense. See 8 Wigmore, Evidence § 2276 (McNaughton rev. 1961). We find no violation of the privilege in allowing the question.

We conclude that the Court of Military Appeals fully and fairly considered appellant's claims of constitutional error and disposed of them in accordance with Supreme Court standards. The judgment of the District Court is

Affirmed.