**John C. STATON, Plaintiff,**

v.

**Robert F. FROEHLKE, Defendant.**

**Civ. A. No. 768-73.**

United States District Court,
District of Columbia,
Civil Division.

Feb. 26, 1975.

Charles A. Trainum, Jr., Washington, D. C., for plaintiff.

Michael A. Katz, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff, a former chief warrant officer in the Army, brought this action against the Secretary of the Army for declaratory and injunctive relief. The suit arises out of a 1971 court-martial conviction in which plaintiff was found guilty of "wrongfully fraternizing" in violation of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934 (1970), and fined a total of $1,000. Plaintiff was acquitted of an additional charge of rape. Upon review of the record, the Convening Authority approved the findings and sentence, and a subsequent application for relief from the conviction was denied. Plaintiff was honorably discharged from the Army in 1972.

■ In this action, plaintiff seeks to have the conviction overturned, claiming that Article 134's proscriptions are unconstitutionally vague as applied to his conduct, and that the Article violates his right of personal association. The case is before the Court on cross motions for summary judgment, and the parties are in basic agreement as to the material facts involved.[1]

Article 134 generally prohibits actions "not specifically mentioned in [the Uniform Code of Military Justice]" which constitute "disorders and neglects to the prejudice of good order and discipline in the armed forces . . . (or) conduct of a nature to bring discredit upon the armed forces." 10 U.S.C. § 934. The specification of the charge involving this Article stated that plaintiff:

"did at Sierra Vista, Arizona, on or about 2 November, 1970, wrongfully fraternize on terms of military equality with (three enlisted persons) by socializing and drinking alcoholic beverages (in a bar), and thereafter in his quarters . . . where he undressed and bathed (one of the enlisted persons), a woman not his wife, and that under the circumstances, such conduct was prejudicial to good order and discipline in the armed forces."

■ This Court's jurisdiction to entertain a collateral attack of a court martial conviction even when not founded on *habeas corpus* is clearly established by Kauffman v. Secretary of the Air Force, 135 U.S.App.D.C. 1, 415 F.2d 991, cert. denied, 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1969). This case held that confinement is not a jurisdictional prerequisite for collateral review of military judgments.

■ The *Kauffman* decision also specified the scope of judicial review of military judgments: "We hold that the test of fairness (announced in Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953)) requires that military rulings on constitutional issues conform to Supreme Court standards, unless it is shown that conditions peculiar to military life require a different rule." 415 F.2d at 997. Thus, although ordinarily there is finality in military judgments as provided in Article 76, 10 U.S. C. § 876, a federal court in a *habeas corpus* or subsequent civil action may scrutinize the military judgment to assure that it passes constitutional muster.

The Supreme Court has recently decided two cases involving challenges to Article 134, holding in both that the Article is not unconstitutional on its face. In Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and a case grounded upon that decision, Avrech v. Secretary of the Navy, 418 U.S. 676, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974), the Court found that Article 134 had been narrowed and specified by the construction given it by decisions of the U. S. Court of Military Appeals, by the Manual for Courts-Martial, and by military custom and usage. Moreover, the Court in *Levy* found that the conduct involved —urging black enlisted men not to go to Vietnam if ordered—was clearly proscribed by the Article, and that a reasonable man would have been put on fair notice of the Article's prohibitions in this regard. The Court, however, stated, "It would be idle to pretend that there are not areas within the general confines of the Articles' (i. e., 133 and 134) language which have been left vague despite these narrowing constructions." 417 U.S. at 754, 94 S.Ct. at 2561. Plaintiff claims that the present case exhibits one of these "vague areas" and presents a viable challenge to Article 134 as applied.

Plaintiff is correct in claiming that the Court-Martial Manual offers no clar-

---

1. The Court does not believe that the previous denial by an Arizona federal court of plaintiff's motion for a permanent injunction preventing the court-martial trial is *res judicata* as to the claims in this cause. That court did not specifically address the issue of Article 134's vagueness and faced very different considerations in the context of a request for injunctive relief against an impending criminal proceeding.

ification of the fraternizing charge in the specifications under Article 134. However, several recent military cases dealing with fraternization have clarified the offense. In United States v. Pitasi, 20 U.S.C.M.A. 601, 44 C.M.R. 31 (1971), the U. S. Court of Military Appeals upheld a conviction for the offense of fraternization, finding a breach of a long-standing custom of the service. The court noted that "[N]ot every social contact between an officer and an enlisted man is or even can reasonably be prohibited." 20 U.S.C.M.A. at 608. However, the court emphasized, "[S]ome acts are by their very nature palpably and directly prejudicial to the good order and discipline of the service." *Id.*

■ In *Pitasi* and another recent case considering fraternization, United States v. Lovejoy, 20 U.S.C.M. 18, 42 C. M.R. 210 (1970), the Court of Military Appeals attempted to draw a line between permissible acts of association and acts violative of military discipline. This approach had been enunciated in United States v. Free, 14 C.M.R. 466 (N.B.R.1953), which both *Pitasi* and *Lovejoy* relied upon. The *Free* court considered that the key factor in determining fraternization offenses was "the appropriateness of the time and place and the circumstances which dictate the proprieties." 14 C.M.R. at 468. The court went on to say,

"Because of the many situations which might arise, it would be a practical impossibility to lay down a measuring rod of particularities to determine in advance what acts are preju-

dicial to good order and discipline and what are not. As we have said, the surrounding circumstances have more to do with making the act prejudicial than the act itself in many cases. Suffice it to say, then, that each case must be determined on its own merits. Where it is shown that the acts and circumstances are such as to lead a reasonably prudent person, experienced in the problems of military leadership, to conclude that the good order and discipline of the armed forces has been prejudiced by the compromising of an enlisted person's respect for the integrity and gentlemanly obligations of an officer, there has been an offense under Article 134." [2]

Although the *Pitasi, Lovejoy,* and *Free* cases all involve different factual settings from that of plaintiff's cause, the Court believes that the standards announced in these decisions have sufficiently narrowed and specified the offense with which plaintiff is charged. Fair notice has been provided by these cases as to the type of fraternizing conduct that is proscribed under Article 134. Under the test announced in *Levy,* Article 134 is not unconstitutionally vague as applied to plaintiff.

■ Nor does this Court find merit in plaintiff's argument grounded upon his First Amendment right of freedom of association. Persons certainly do not forfeit constitutional protections upon entrance into the military. Still, the different character of military life and of the military community may require a restriction of certain conduct that is

2. *Id.* at 470. In accordance with these three decisions, the military judge in plaintiff's court-martial case instructed the jury:

"By 'fraternize' as used in these instructions, is meant to associate with another or others on intimate terms. Not all associations by a military superior with a subordinate are wrongful. It is the appropriateness of the time, place, circumstances, and conduct which is the determinant. To be wrongful, the fraternization must be of such a nature as to demean the military superior, to detract from the respect and regard for authority inherent in the superior-subordinate relationship.

In connection with the last element of this offense, 'to the prejudice of good order and discipline,' refers only to acts directly prejudicial to good order and discipline, and not to acts which are prejudicial only in a remote or indirect sense. An irregular or improper act on the part of the member of the armed forces can scarcely be conceived which may not be regarded as in some indirect or remote sense prejudicing discipline, but Article 134 does not contemplate such distant effects and is confined to cases in which the prejudice is reasonably direct and palpable." (Record, p. 193)

considered to adversely affect discipline and the proper performance of duties. Cf. Parker v. Levy, *supra,* 417 U.S. at 758, 94 S.Ct. 2547, 41 L.Ed.2d 439. While similar limitations might be offensive if applied to civilians, in the context of military life the prohibition on specified types of fraternization serves a valid and necessary purpose. For this reason, the Court rejects the freedom of association argument advanced by plaintiff.

Accordingly, upon consideration of the cross motions for summary judgment, oral argument of counsel, and the entire record herein, the constitutional challenges having been found to be without merit, it is by the Court this 26th day of February, 1975, Ordered that defendant's motion for summary judgment is granted, and that judgment be entered for defendant dismissing the above-entitled cause.