Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 18, 2009        Decided November 13, 2009

No. 08-5402

KEVIN R. SANFORD,
APPELLANT

v.

UNITED STATES OF AMERICA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01792-RCL)

*Eugene R. Fidell* argued the cause for appellant.  With him on the briefs was *Matthew S. Freedus*.

*Doris Coles-Huff*, Assistant U.S. Attorney, argued the cause for appellee.  With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney.  *Alan Burch*, Assistant U.S. Attorney, entered an appearance.

Before: ROGERS, TATEL and BROWN, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: In challenging his conviction by a military court-martial consisting of less than six persons, Kevin Sanford invites this court to hold that his rights under the Due Process Clause of the Fifth Amendment were violated. He relies on the Supreme Court's announcement of a constitutional minimum six-person jury for the trial of civilian, non-petty offenses in *Ballew v. Georgia*, 435 U.S. 223 (1978), and suggests it is the government's burden to show that his due process rights were not violated. Because *Ballew* was grounded in the Sixth Amendment right to a jury trial, however, Sanford is actually seeking a new due process right to a court-martial panel of a minimum size. Sanford's focus on rebutting the government's assertions thus fails to engage the appropriate inquiry under *Weiss v. United States*, 510 U.S. 163 (1994), which is "whether the factors militating in favor of [the proposed rule] are so extraordinarily weighty as to overcome the balance struck by Congress," *id.* at 177–78 (quoting *Middendorf v. Henry*, 425 U.S. 25, 44 (1976)). Because Sanford failed to engage this standard before the military courts, their resolution of his claim suffered from no fundamental defect and was properly upheld by the district court.

The Supreme Court's conclusion regarding minimum jury size in the civilian system was based on empirical studies. *Ballew*, 435 U.S. at 231–39. Sanford presented no similar empirical evidence regarding the military justice system, which has features to ensure accurate fact finding not found in the civilian justice system. Rather, Sanford contends that *Ballew* reflects a conclusion about a fundamental right that is required by due process under both the Fifth and Fourteenth Amendments. Still he fails to show that the empirical data

underlying *Ballew*'s holding applies with equal force to the military justice system, which is based on Congress' balancing of interests, some of which are unique to the military. Doubtless it is fundamental that there be accurate fact finding under the justice system Congress established in the Uniform Code of Military Justice, 10 U.S.C. §§ 801, *et seq.* ("UCMJ"), but Sanford fails to show that the design of the military system is so incompatible with that principle as to violate due process. Accordingly, we affirm the dismissal of his complaint.

## I.

### A.

Pursuant to Article I of the Constitution, U.S. CONST. art. I, § 8, cl. 14, Congress established a military justice system that includes three types of courts-martial: summary, special, and general. *See* 10 U.S.C. § 816. The summary court-martial consists of only one commissioned officer, *id.* § 816(3), has jurisdiction over enlisted men and women only, can be conducted only with their consent, and can impose only a limited array of minor punishments for minor offenses, *see id.* § 820. At the other end of the spectrum is the general court-martial, which comprises a military judge and at least 5 members, or the judge alone if the accused so requests, *id.* § 816(1), has jurisdiction over all persons in the military for offenses under the UCMJ, and can impose all lawful sentences, even death, *see id.* § 818.

The special court-martial, at issue in this appeal, falls somewhere in between. Consisting of not less than three members, a military judge and not less than three members, or the military judge alone if the accused requests, *id.* § 816(2), the special court-martial has jurisdiction over most offenses under the UCMJ and may, "under such limitations as the President may prescribe, adjudge any punishment not forbidden by this

chapter except death, dishonorable discharge, dismissal, confinement for more than one year, hard labor without confinement for more than three months, forfeiture of pay exceeding two-thirds pay per month, or forfeiture of pay for more than one year," *id.* § 819. Subject to an exception for exigency, adjudgment of "[a] bad-conduct discharge, confinement for more than six months, or forfeiture of pay for more than six months" requires that a military judge have presided over the court-martial, that a complete record have been made, and that counsel have been detailed to the accused. *See id.*

The military judge who presides over a special or general court-martial rules on all legal questions and instructs the members regarding the law and procedures to be followed. *Id.* § 851. The members (if the accused has not opted to be tried by the military judge alone) decide guilt or innocence, as well as the sentence, if any, to be imposed. *Id.* Except in death cases, their verdict need not be unanimous. 10 U.S.C. § 852. Members of the court-martial are selected on the basis of being "best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." 10 U.S.C. § 825(d)(2).

Upon conviction, the defendant may appeal, *id*. § 866, and the service court of appeals is required to review the entire record *de novo*, *id.* § 866(c), and may "'substitute its judgment' for that of the military judge [and] that of the court members," *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990). A further appeal may be had upon petition to the United States Court of Appeals for the Armed Forces at that court's discretion. 10 U.S.C. § 867(a)(3). The Court of Appeals for the Armed Forces may only set aside convictions that are "incorrect in law." *Id.* § 867(c); *see also Cole*, 31 M.J. at 272. The court's

refusal to grant a petition is not subject to review by the United States Supreme Court.  10 U.S.C. § 867a(a); 28 U.S.C. § 1259.

**B.**

Sanford is a former sergeant who served in the United States Marine Corps.  On October 3, 2004, a special court-martial comprised of a military judge and four members convicted him of violating a lawful order, dereliction of duty, larceny, and impersonating an officer, all in violation of the UCMJ, 10 U.S.C. §§ 892, 921, 934.  The conviction was based on his false preparation of recall orders for a marine reservist that, along with other false representations, induced the reservist's employer to purchase airfare on his behalf from Texas to Camp Pendleton, California.  Sanford was sentenced to confinement for six months, forfeiture of $767.00 pay per month for six months, reduction from pay grade E-5 to E-1, and a bad-conduct discharge.

On appeal, the United States Navy-Marine Corps Court of Criminal Appeals ("the Marine Corps Court") affirmed the court-martial's finding of guilt with some modifications and reduced the period of his confinement to 150 days.  *United States v. Sanford*, 2006 WL 4571896, at *11 (N-M. Ct. Crim. App. Nov. 6, 2006).  Rejecting Sanford's argument that empaneling fewer than six members for his court-martial violated his Fifth Amendment right to due process in contravention of the standard articulated in *Ballew*, the Marine Corps Court stated:

> We have considered the appellant's eighth assignment of error challenging his convictions for 'non-petty offenses' by a panel of only four members, and find it to be without merit.  *See United States v. Wolff*, 5 M.J. 923, 925 (N.C.M.R. 1978); *see* also Art. 29, UCMJ.

*Id.* at \*10 n.2. The Court of Appeals for the Armed Forces denied Sanford's petition for review. *United States v. Sanford*, 64 M.J. 428 (C.A.A.F. 2007).

On October 4, 2007, Sanford filed suit in the federal district court challenging the validity of his conviction. As he did on direct appeal, Sanford argued that his four-member court-martial violated his due process rights under *Ballew*. The district court ruled that the Marine Corps Court had given thorough consideration to Sanford's argument and that the court's judgment did not contravene Supreme Court standards. *Sanford v. United States*, 567 F. Supp. 2d 114 (D.D.C. 2008). Sanford appeals, and this court reviews *de novo* the dismissal of his complaint for failure to state a claim. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

**II.**

This court has recognized that the standard of review in non-custodial collateral attacks on court-martial proceedings is "tangled." *United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006) ("*New II*"). Two lines of precedent are relevant: the first deals with the "full and fair consideration" standard that applies for habeas review of courts-martial, and the second deals with the "void" standard that applies to collateral attacks on court-martial proceedings by persons who are not in custody. The court in *New II*, which was faced, as here, with a non-custodial plaintiff, attempted a synthesis of the two standards, looking primarily to the military courts' analyses of the merits of the plaintiff's claim. Because the first standard ("full and fair consideration") is, if anything, less deferential than the second ("void"), the court observed that a claim that fails the former *a fortiori* fails the latter. *Id*. at 408. In that situation, the court did not need to address how much more

deference, if any, was due to the military court's judgment on non-custodial review.

In *Burns v. Wilson*, 346 U.S. 137 (1953) (plurality), the Supreme Court first articulated the "full and fair consideration" standard, stating in the context of military *habeas* proceedings that "when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civilian court to grant the writ simply to re-evaluate the evidence," *id.* at 142. In *Kauffman v. Secretary of the Air Force*, 415 F.2d 991 (D.C. Cir. 1969), this court interpreted that standard, observing that "[t]he Supreme Court has never clarified the standard of full and fair consideration, and it has meant many things to many courts," *id.* at 997. The court reasoned that the standard should not differ "from that currently imposed in habeas corpus review of state convictions," and held that "the test of fairness requires that military rulings on constitutional issues conform to Supreme Court standards, unless it is shown that conditions peculiar to military life require a different rule." *Id.*

The second line of precedent follows *Schlesinger v. Councilman*, 420 U.S. 738 (1975), which held that federal courts have jurisdiction to review the validity of court-martial proceedings brought by *non-custodial* plaintiffs who cannot bring habeas suits, *id.* at 752–53. However, for a court to grant any relief to such plaintiffs, the military court judgment must be "void," *id.* at 748; *see id.* at 753, meaning the error must be fundamental. The Supreme Court stated that "whether a court-martial judgment properly may be deemed void . . . may turn on the nature of the alleged defect, and the gravity of the harm from which relief is sought. Moreover, both factors must be assessed in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress." *Id.* at 753. This court adopted the *Councilman*

standard as law for the circuit for non-custodial collateral attacks on court-martial judgments in *Priest v. Secretary of the Navy*, 570 F.2d 1013, 1016 (D.C. Cir. 1977), and there considered the fundamental nature of the purported constitutional errors, *id.*, in light of Supreme Court precedent examining the requirements of the First Amendment, *id.* at 1016–18.

In *New II*, the court traced both these standards, their interplay with the evolution of the relevant standards for habeas review of civilian criminal judgments, and the level of deference to be accorded by the court in each type of proceeding. In the end, however, the court stated it had "serious doubt whether the judicial mind is really capable of applying the sort of fine gradations in deference that the varying formulae may indicate." *New II*, 448 F.3d at 408. Acknowledging "*Councilman*'s statement that errors must be fundamental to void a court-martial judgment on collateral review," *id.*, the court held that "in light of *Councilman*'s point that non-habeas review is if anything more deferential than habeas review of military judgments, a military court's judgment clearly will not suffer such a defect if it satisfies *Burns*' 'fair consideration' test," *id.* at 408 (internal citation omitted). Ultimately, the court found no fundamental defect in the military Court of Appeals' resolution of the claim. *Id*. at 408, 410.

However, in applying the "full and fair consideration" test, the court in *New II* did not strictly follow *Kauffman*, which would have required the court to consider New's claims *de novo* and solely on the merits before shifting the burden to the military to show that the needs of military life require a different rule. In *New II* the court's review was searching, but deferential, much as in *Priest*, 570 F.2d at 1018, stating, for example, "the Court of Appeals reasonably found," 448 F.3d at 409, and "we can find no fundamental defect in the Court of Appeals' consideration of the issue," *id.* at 410, and "the military courts'

use of the political question doctrine deserves deference," *id.* By contrast, the *Kauffman* view of "full and fair consideration," which asks whether the military court's decision conforms to Supreme Court standards, does not appear to contemplate such deference. Although in *New II* the court did not describe the exact degree of deference accorded to the military courts, its analysis suggests there are two steps in applying the "full and fair consideration" standard: (1) a review of the military court's thoroughness in examining the relevant claims, at least where thoroughness is contested; and (2) a close look at the merits of the claim, albeit with some degree of deference and certainly more than under *Kauffman*'s *de novo* standard.

The contrast between *Kauffman* and *New II* is sharp because *New II* does not refer to *Kauffman*, which represented this court's most extensive previous interpretation of the *Burns* "full and fair consideration" standard that *New II* purports to apply (albeit as a stand-in for the *Councilman* "void" standard). However, Sanford's appeal does not present the occasion in which the inconsistencies are outcome-determinative, and we reserve for another day the question whether, on collateral review in non-custodial cases, the court need ever reach *Burns*' "full and fair consideration" inquiry: that is, resolving the extent to which the *Burns* and *Councilman* standards may differ and the content of those standards. Sanford presents two challenges to his conviction: he contends, first, that the military courts did not give his due process claim thorough-enough consideration to satisfy the "full and fair consideration" standard, and second, that his four-member court-martial violated the Due Process Clause of the Fifth Amendment under *Ballew*. Although in a non-custodial case *Councilman* frames the inquiry, we apply *New II*'s approach, considering Sanford's claims on the merits — the least deferential test possible under either *Burns* or *Councilman* — for it remains true that if they are unpersuasive

10

on the merits, Sanford's claims would fail *a fortiori* under the more deferential "void" inquiry.

**III.**

For a Fifth Amendment due process claim in the court-martial context, the Supreme Court has instructed that in light of the fact that "[j]udicial deference . . . is at its apogee when reviewing congressional decisionmaking in this area," *Weiss*, 510 U.S. at 177 (internal quotations omitted), "the appropriate standard to apply . . . is found in *Middendorf*," *id.*, where the Court inquired "whether the factors militating in favor of [the proposed rule] are so extraordinarily weighty as to overcome the balance struck by Congress," *id.* at 177–78 (quoting *Middendorf*, 425 U.S. at 44). The question here, therefore, is whether Sanford has shown that the factors militating in favor of a six-member court-martial are so extraordinarily weighty as to overcome the balance struck by Congress when it provided that special courts-martial could proceed with as few as three members.

**A.**

The Marine Corps Court addressed Sanford's due process argument in a footnote to its multi-page opinion, citing *United States v. Wolff*, 5 M.J. 923 (N.C.M.R. 1978). In *Wolff*, the Navy Court of Military Review,[1] after noting the Sixth Amendment's inapplicability to courts-martial, *id.* at 924, concluded the *Ballew* factors were inapplicable through the Fifth Amendment as well, *id.* at 925. The court observed that Wolff's contentions

---

[1] Until 1994, the Navy-Marine Corps Court of Criminal Appeals was called the Navy Court of Military Review and the Court of Appeals for the Armed Forces was called the Court of Military Appeals. *See* National Defense Authorization Act for Fiscal Year 1995, Pub. L. No. 103–337, § 924, 108 Stat. 2663, 2831–32 (1994).

"rel[ied] upon the *Ballew* rationale that the quality of justice varies proportionately with the number of members in the deliberating body." *Id.* However, it concluded that no evidence in the record supported this premise when applied to courts-martial. Furthermore, because of differences between civilian jurors and court-martial members, the court was unwilling to adopt empirical data compiled in the civilian community. *Id.* The court noted that court-martial members are not selected to represent a cross-section of the community and are deliberately selected, not at random, but on the basis of who is best qualified for the position. *Id.*; *see also United States v. Corl*, 6 M.J. 914, 915–16 (N.C.M.R. 1979); *United States v. Guilford*, 8 M.J. 598, 601–02 (A.C.M.R. 1979).

Sanford's strongest point in contending that the military courts failed to give his due process claim "full and fair consideration" is that because Congress doubled the confinement and forfeiture powers of special courts-martial from six to twelve months,[2] after *Wolff* was decided but before his case, simply citing *Wolff* was insufficient. However, neither *Wolff*, *Corl*, nor *Guilford* relied on the panel's punishment power to justify their holdings. *Corl* like *Wolff* instead focused on the empirical data before the Supreme Court in *Ballew*, and on the judicially recognized fact that the civilian community is different from the military community. *See Corl*, 6 M.J. at 915 (citing *Parker v. Levy*, 417 U.S. 733 (1974); *Councilman*, 420 U.S. 738); *see also Guilford*, 8 M.J. at 601–02. Furthermore, the factual premises underlying the rationale in all three of those cases has not changed. It remains true that there are differences between civilian jurors and court-martial members and that court-martial members are not selected at random to represent

---

[2] National Defense Authorization Act for Fiscal Year 2000, Pub. L. No. 106–65, § 577(a), 113 Stat. 512, 625 (1999) (amending 10 U.S.C. § 819).

a cross-section of the community but rather selected from the military population on the basis of who is best qualified for the position. 10 U.S.C. § 825(d)(2). Because Sanford's due process claim was therefore controlled by those prior decisions, it is unclear what benefit could have come from a longer discussion.

Taking *New II* at its word, 448 F.3d at 410, that summary disposition is appropriate for a weak claim, the Marine Corps Court's citation to precedent addressing the relevant considerations and UCMJ Article 29 sufficed. The Marine Corps Court gave "full and fair consideration" to Sanford's due process claim in light of the fact that its resolution was predetermined by binding precedent.

**B.**

In *Ballew* the Supreme Court held that five-person juries for non-petty offenses violated the Sixth Amendment right to a criminal jury trial, 435 U.S. at 239, a right that previously had been incorporated through the Fourteenth Amendment to apply to the States, *see Duncan v. Louisiana*, 391 U.S. 145 (1968). Relying on empirical studies of juries and group dynamics more generally, the Court concluded that there was a constitutional deficiency with juries that were too small. The studies showed that, in general, as group size decreased beyond a certain threshold, so did the quality of deliberation, *Ballew*, 435 U.S. at 232–33. When juries in particular were smaller, the studies raised doubts about the accuracy and consistency of the results achieved. *Id.* at 234. The studies further indicated that smaller juries resulted in fewer minority viewpoints being represented, and that jurors holding those viewpoints were less likely to speak up during deliberations. *Id.* at 236. Finally, the studies indicated that representation of minority groups decreased with decreasing panel size. *Id.* at 236–37. Given the Sixth Amendment's requirement of "an impartial jury of the State and district wherein the crime shall have been committed," the Court

was concerned that juries with fewer than six members would limit "the opportunity for meaningful and appropriate representation" of a "cross-section of the community," *id.* at 237.

Members of the military are entitled to the basic guarantees of due process. *Burns*, 346 U.S. at 142–43. However, the Sixth Amendment right to a criminal jury trial does not, itself, apply to the military. *Ex parte Quirin*, 317 U.S. 1, 38–41 (1942). Therefore, Sanford's challenge to a special court-martial of less than six members must proceed without the benefit of that right. Thus, Sanford was obligated to demonstrate to the military courts that, under the Fifth Amendment, "the factors militating in favor of [at least six-member courts-martial] are so extraordinarily weighty as to overcome the balance struck by Congress," *Weiss*, 510 U.S. at 177–78 (quoting *Middendorf*, 425 U.S. at 44). Instead, Sanford attempts to avoid the balancing that *Weiss* requires for new due process rights by recasting *Ballew* as a *due process* case that would apply directly to courts-martial as a preexisting constitutional requirement. He maintains that because courts-martial are subject to the Due Process Clause of the Fifth Amendment, and because the Sixth Amendment jury trial right applies to the States through the Due Process Clause of the Fourteenth Amendment, *Ballew* is in fact a "due process" case that provides the requisite Supreme Court standard, from which the military must justify deviation under *Kauffman*. *See* Appellant's Br. at 18–21. For at least two reasons, this position is flawed.

First, adoption of Sanford's reasoning would undermine *Quirin*, essentially importing a Sixth Amendment jury trial right that the Supreme Court has held is inapplicable to the military through the Fifth Amendment. Second, Sanford misapprehends the doctrine of incorporation. As *Ballew* makes clear, the "[Sixth] Amendment's provision as to trial by jury is *made*

14

*applicable* to the States by the Fourteenth Amendment." 435 U.S. at 224 n.1 (emphasis added). The right to jury trial is not, however, converted into a procedural due process right by incorporation. Sanford's assertion of a Fifth Amendment due process right to a trial by at least six court-martial members therefore seeks recognition of an as yet undiscovered constitutional right.

Sanford's flawed conclusion that *Ballew* recognized a due process right infects the rest of his argument, which presumes that "[t]he burden is on the government to show 'that military conditions require a different rule than that prevailing in the civilian community.'" Appellant's Br. 24 (citing *Courtney v. Williams*, 1 M.J. 267, 270 (C.M.A. 1976) (in turn citing *Kauffman*, 415 F.2d at 997)). If the Sixth Amendment jury trial right applied directly to the military, then it would have been relevant (if true) that "[t]he government never demonstrated . . . that the empirical basis on which *Ballew* rests would be any different in light of the compositional differences between court-martial panels and civilian juries," *id.* at 21. Under *Kauffman* judgments can diverge from Supreme Court standards only when military life requires a different rule. Because *Ballew* was not a due process case, however, there is no prevailing Fifth Amendment standard on this issue with which to require military conformity, and Sanford had to do more than simply rebut the government's arguments about why *Ballew* was inapposite; he had to offer affirmative arguments to meet the higher standard articulated in *Weiss*.

Sanford does contend that court-martial members are not functionally different from civilian jurors. Both need to evaluate evidence and find facts, and both justice systems are premised on the implicit assumption that there will be a fair and impartial tribunal that will find facts accurately. One circuit has suggested this similarity lends "some credence" to Sanford's

view that the numerosity requirements should be similar. *Mendrano v. Smith*, 797 F.2d 1538, 1541 (10th Cir. 1986). Sanford points to *Williams v. Florida*, 399 U.S. 78, 100 (1970), for the proposition that the "purpose of the jury trial . . . is to prevent oppression by the Government." Even so, Sanford's contention suffers from the same flaw as his contention the burden is on the government: because *Ballew* was not a Fifth Amendment case, arguing that civilian jurors and court-martial members are functionally equivalent does not advance Sanford's Fifth Amendment due process claim. The Due Process Clause does not currently contain a requirement of a trial by jury or court-martial panel, and Sanford therefore needed to offer a persuasive connection between the considerations underlying *Ballew* and Fifth Amendment due process.

Sanford assumes that the differences between courts-martial and civilian trials, considered holistically, are irrelevant to the due process inquiry. *See* Appellant's Br. at 20. However, *Wolff* recognized that courts-martial are not empaneled to represent a fair cross-section of the community, *Wolff*, 5 M.J. at 925, and *Ballew*'s holding rested in part on this requirement, *see Ballew*, 435 U.S. at 236–37. Indeed, civilian justice and military justice differ in ways even as fundamental as the purposes that the two systems of justice serve. Sanford himself recognizes that one of the purposes of military law, unlike civilian law, is "to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in the military establishment, and thereby to strengthen the national security of the United States." Appellant's Br. 20 n.12; Reply Br. 5–6 (quoting *Manual for Courts-Martial*, *United States*, Preamble ¶ 3 (2008 ed.)). Yet Sanford never confronts those parts of the military justice system that focus on the accuracy of fact finding, nor on its various procedural safeguards regarding qualifications for members of courts-martial, *see, e.g.*, 10 U.S.C. § 825(d)(2), the requirement of fair and impartial panel members, *United*

16

*States v. Dowty*, 60 M.J. 163, 169 (C.A.A.F. 2004), much less on the provision of *de novo* appellate review, 10 U.S.C. § 866(c).

Under *Weiss*, it is insufficient for Sanford simply to posit that members of a court-martial have the same legal duty as civilian jurors to follow the judge's instructions and thus to conclude that the military justice system is not so "distinct" as to preclude the application to the military of the numerosity requirement identified in *Ballew*. Neither is it enough to point out that the government failed to demonstrate through studies or otherwise that the empirical basis on which *Ballew* rests would be any different in light of the compositional differences between court-martial panels and civilian juries. In light of those differences and the functional differences between the civilian and military justice systems more generally, the military courts' rejection of Sanford's claim was not fundamentally defective. In urging a new due process right Sanford had to demonstrate that the empirical studies relied on in *Ballew* or comparable studies of the military justice system would show a due process violation in the context of the military justice system.

It is true that Sanford points to history showing that courts-martial of three members or fewer have never been able to impose imprisonment of greater than six months, although courts-martial of five members were granted such authority by the Continental Congress (as are general courts-martial under the UCMJ). History is "a factor that must be weighed" in the due process analysis. *Weiss*, 510 U.S. at 179. But Sanford acknowledges that the absence of historical precedent is not enough for him to succeed. *See* Appellant's Br. 30.

To the extent Sanford sought to rely on *Ballew*, it was incumbent on him to demonstrate, at a minimum, that *Ballew*, or the considerations underlying its holding, applied outside of

the Sixth Amendment to the Due Process Clause of the Fifth Amendment. That is, he needed to show that the same concerns underlying the *Ballew* decision also undermine "a fair trial in a fair tribunal," which is "a basic requirement of due process," *Weiss*, 510 U.S. at 178 (internal quotation omitted), so as to meet his burden under *Weiss*. This Sanford did not do. Because he presumed that the government had the burden to justify a departure from the *Ballew* rule, the majority of his briefing simply rebuts the arguments that the government presented in the district court. But these arguments do not offer affirmative reasons why courts-martial that fail to conform to *Ballew* violate the Fifth Amendment. As the advocate of a rule that does not already apply, Sanford needed to show that Fifth Amendment due process requires a court-martial panel to have six or more members. Instead, by presuming the burden was on the government to justify a "departure" from *Ballew*, which in turn incorrectly presumed that *Ballew* applied to courts-martial, he failed to present arguments under the appropriate standard articulated in *Weiss*. Accordingly, because the military courts' analysis suffered from no fundamental defect, we affirm the dismissal of Sanford's complaint pursuant to Rule 12(b)(6).