**John R. COTHRAN, Plaintiff,**

v.

**John H. DALTON, Secretary of the Navy, Defendant.**

No. Civ.A. 98–1454(TAF).

United States District Court, District of Columbia.

Dec. 20, 1999.

John Adam Wickham, Evergreen, CO, for Plaintiff.

Mark E. Nagle, Wilma Antoinette lewis, Michael Anthony Humphrey, U.S. Attorney's Office, Washington, DC, for Defendant.

*MEMORANDUM OPINION*

FLANNERY, District Judge.

*I. Introduction*

Plaintiff John R. Cothran ("Cothran") has brought this action seeking collateral

review of his court-martial conviction. He alleges violations of due process during the court-martial proceeding and during the military review process. Jurisdictionally, he rests the action on 28 U.S.C. §§ 1331 (federal question jurisdiction), 1361 (mandamus jurisdiction) and 2201–02 (the Declaratory Judgement statute). In his motion papers, he adds that he is alternatively seeking review under § 706 of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706 (1994).

As relief, plaintiff asks the Court to (1) declare defendant's actions to have been arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law, regulations and policy; and (2) order the Navy to set aside the conviction and expunge from plaintiff's files all documents relating to and resulting from the court-martial and conviction, "including adverse fitness reports, voidance of his military specialty, and other appropriate records." Compl. at 12.

Pending before the Court are defendant's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6), or in the alternative for summary judgment, and plaintiff's cross-motion for summary judgment. For the reasons discussed below, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The action is therefore dismissed.[1]

## II. Background and Procedural History

On June 30, 1992, plaintiff was tried by summary court-martial on the charge of wrongful failure to report evidence of recruit abuse to a Company Officer in violation of a standing general order. The charge arose out of events in March and April of 1992, at which time plaintiff was assigned as a senior drill instructor ("SDI") for platoon 3048 at the rank of Staff Sergeant, Grade E–6.

At some time in March, 1992, plaintiff received a report from the platoon's scribe, Recruit Smith ("Smith") that Sergeant Williams ("Williams"), one of plaintiff's two subordinate drill instructors, had struck a recruit named Norton across the nose with the leg of a bed. Plaintiff alleges that, after questioning Norton and speaking with the platoon, he reported the incident to his direct supervisor, Staff Sergeant Fleuter ("Fleuter") in the presence of Smith, and brought Fleuter to observe Norton's injury.

In mid-April, plaintiff received orders reassigning him for non-disciplinary reasons to temporary duty involving seven weeks of training. The day before he was to leave, plaintiff met with the members of his platoon, informed them of his departure and requested letters regarding how training was proceeding. He received numerous letters from recruits in the platoon

1. Plaintiff has also filed two non-dispositive motions. The first is a motion for leave to cite supplemental authority, specifically the APA, in support of his action. The defendant opposes this motion as an attempt to amend the complaint without filing a proper motion to amend pursuant to Fed.R.Civ.P. 15(a). The Court does not agree that the additional citation to the APA constitutes an amendment to the complaint. The complaint already alleges that the "Navy's denial of relief to plaintiff has been arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law, regulations and policy." Compl. at 12. This is, virtually *verbatim*, a standard of review under § 706 of the APA. 5 U.S.C. § 706 (1994). Although the complaint

does not specifically cite the APA as the legal basis for review, Fed.Civ.P. 8(a) does not require a claimant to plead the legal theories upon which he bases the claim. *See Grogan v. General Maintenance Service Co.*, 763 F.2d 444, 449 (D.C.Cir.1985). The Court therefore grants the motion to cite the APA, and will consider the plaintiff's APA claim sufficiently alleged.

Plaintiff's second motion is also a motion "to cite supplemental authorities" which chiefly seeks to call the Court's attention to an article relating to an argument raised by the defendant. The defendant has been twice asked by the Court whether there is any objection to the motion, and no objection has been voiced. Accordingly, the motion is granted.

alleging physical or verbal abuse by Williams. Responding to the letters, plaintiff reassigned Williams out of training duty and then, according to plaintiff, informed Fleuter, as well as plaintiff's replacement, Sergeant Gridley ("Gridley"), of these new reports of abuse.

Subsequently, another recruit from platoon 3048 reported abuse by Williams to an officer. After an investigation, Williams was tried by summary court-martial for recruit abuse and convicted. As punishment, Williams was permanently relieved of his duties and reduced one step in rank.

When plaintiff returned on June 17, 1992, he was informed by his Company Commander, Captain DeForest, that he was under investigation for possible violations of Depot Order P1513.1A, which defines recruit training procedures and states in part that "allegations that surface during recruit interviews must be reported to a company officer in the recruits [sic] chain of command if possible, or otherwise made known to proper authorities." Pl. App.Ex. C at Ex. 4, ¶ 2. A preliminary investigation by Major Bruce T. Kowalski ("Kowalski"), the same individual who investigated Williams, looked into plaintiff's knowledge of recruit abuse. The investigation was completed on June 25, 1992 and forwarded to the Commanding Officer. Kowalski's report recommended that plaintiff be referred to a summary court-martial.

On June 30, 1992, plaintiff was charged with failing to obey a general order in violation of Article 92, specifically, failing to report evidence of recruit abuse to a Company Officer.[2] A charge may be brought and referred to a summary court-martial by various military officers speci-

fied in 10 U.S.C. §§ 822–24 (1994). The referring officer is called the "convening authority." In this case, a summary court-martial was convened by Lieutenant Colonel Stewart ("Stewart"), with Major Daley ("Daley") as the officer presiding.[3] At trial, plaintiff represented himself without counsel. According to plaintiff, Daley required that all of plaintiff's questions had to be asked through Daley, refused to question several of plaintiff's requested witnesses at all and did not allow him to cross-examine the witnesses. In particular, Cothran was allegedly not allowed to cross-examine Norton, the recruit who suffered the abuse.

On July 1, 1992, the court-martial found plaintiff guilty and sentenced him to reduction of rank from pay grade E–6 to pay grade E–5, forfeiture of $1,043.40 of his salary for one month, and restriction of movement for sixty days.

Under procedure established in the Uniform Code of Military Justice, the judgment and sentence given by the court-martial are referred back to the "convening authority" (Stewart) pursuant to 10 U.S.C. § 860 (1994). Section 860(c)(2) mandates that the convening authority take action on the sentence, either approving, disapproving, commuting or suspending the sentence, in whole or in part. The particular action chosen is in the sole discretion of the convening authority. 10 U.S.C. § 860(c)(2) (1994). Section 860(c)(3) permits but does not require the convening authority to take action on the findings of the court-martial.

At this stage, the accused has the right to submit further matters to the convening authority which related to the disposition or sentence of the charge within seven

---

2. Article 92 is codified at 10 U.S.C. § 892, and states in part

Any person subject to this chapter who ... violates or fails to obey any lawful general order or regulation ... shall be punished as a court-martial may direct.

3. The summary court-martial is one of three court-martial procedures. It may be used to adjudicate only minor offenses, has jurisdiction only over service members, and can be conducted only with their consent. Here, plaintiff concededly gave his consent and at no time up to the announcement of a verdict did he withdraw it.

days after the sentence is announced. 10 U.S.C. § 860(b)(1) (1994). This provision is implemented in the Manual for Courts Martial by Court–Martial Rule (hereinafter "R.C.M.") 1105.[4] On July 10, 1992, plaintiff made a R.C.M. 1105 submission to Stewart raising various arguments for setting aside the conviction. According to the subsequent JAG review, plaintiff asserted in his 1105 submission that Fleuter and Gridley had lied at the court-martial when they testified that plaintiff had not informed them of the abuse, and that plaintiff had been unable to show that they were lying because he did not have access to platoon members as witnesses. With his R.C.M. 1105 papers, he submitted a statement from one recruit supporting his assertion that Gridley was aware of a problem with Williams.

On the same day that plaintiff made his 1105 submission, he invoked his right to "request mast" before Major General Deegan, the Commanding General. "Request mast" is a procedure which provides the right to communicate with one's commanding officers in the chain of command up to and including the Commanding General. Pl.Ex. C–8. As a result of plaintiff's 1105 submission and his "request mast," Stewart ordered Major Kowalski to conduct a third investigation, this time "into the allegation made by Staff Sergeant Cothran concerning physical abuse reports to Sergeant Gridley and Staff Sergeant Fleuter...." Pl.Ex. C–11.

Kowalski conducted his investigation through private interviews without providing plaintiff with an opportunity to participate. He completed his investigation on July 28, 1992 and submitted various findings and recommendations to Stewart. Pl. Ex. C–11. Most significantly, Kowalski found that plaintiff had informed Fleuter that there was a problem with Williams but did not specify the nature of the problem, and that plaintiff's assertion that Fleuter and Gridley had been told that the problem was specifically physical abuse was unsubstantiated. He therefore recommended that the conviction stand and that no action be taken against Fleuter and Gridley. On July 29, 1992, Stewart as convening authority approved the conviction but suspended all punishment for six months.

In August of 1992, plaintiff was issued an adverse fitness report based on the contention that plaintiff had failed to property report recruit abuse. Subsequently, his Military Occupational Specialty ("MOS") as a drill instructor was voided.

On September 22, 1992, Stewart amended his July 22 action, reducing the amount forfeited to $953.00 and also indicating that following the six month suspension, "unless sooner vacated, the remaining portion of the sentence will be remitted without further action." P.Ex. A at 3.

On September 25, 1992, plaintiff again invoked his right to "request mast" before General Deegan, asserting that the third

---

**4.** Rule 1105 of the Manual For Courts–Martial, as applicable in 1992, provided as follows:

 (a) In general. After a sentence is adjudged in any court-martial, the accused may submit matters to the convening authority in accordance with this rule.

 (b) Matters which may be submitted. The accused may submit to the convening authority any written matters which may reasonably tend to affect the convening authority's decision whether to disapprove any findings of guilty or to approve the sentence. Such matters are not subject to the Military Rules of Evidence and may include:

 (1) Allegations of errors affecting the legality of the findings or sentence;

 (2) Portions or summaries of the record and copies of documentary evidence offered or introduced at trial;

 (3) Matters in mitigation which were not available for consideration at the court-martial; and

 (4) Clemency recommendations by any member, the military judge, or any other person. The defense may ask any person for such a recommendation.

Manual For Courts–Martial, Exec. Order 12,-473, 49 Fed.Reg. 17152 (1984).

Kowalski investigation was improperly ex parte and that several key witnesses were not interviewed. He requested that Deegan not approve the voidance and that plaintiff's evaluation report be upgraded. However, because of the conviction, Deegan refused plaintiff's requests. In an addendum page to the evaluation, Deegan concluded that Gridley, and possibly Fleuter, also had knowledge of the abuse (he did not say how they gained such knowledge). However, Deegan also found that plaintiff's action "was not in accordance with the SOP" and that the recruit abuse "should have been reported." Pl.Ex. C–13.

On March 10, 1994, plaintiff sought to have his conviction reviewed by the Judge Advocate General's Office ("JAG") pursuant to Article 69(b), 10 U.S.C. § 869 (1994).[5] At least two members of the JAG staff issued detailed recommendations that the application be denied, reasoning primarily that even if plaintiff had reported to Fleuter, he had not satisfied the general order which required immediate reporting to a "Company Officer" because Fleuter, a Staff Sergeant, was not a "Company Officer." In the recommendation, the JAG found that the intention of the order was that the issue be "removed from the Drill Instructor level, investigated by an uninvolved party, closely scrutinized and resolved." Def.Ex. A at 5. In April of 1995, the JAG formally affirmed the conviction,

In 1995 and 1996, plaintiff was twice non-selected for promotion to the next grade of E–7. He subsequently brought this action.

## III. Analysis

### A. Standard of Review

Under Fed.R.Civ.P. 56, a party may move for summary judgment if the record indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the non-moving party must demonstrate that a genuine dispute exists, and provide evidence sufficient for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. A court making a summary judgment determination must view the facts in a light most favorable to the non-movant, giving the non-movant the benefit of all reasonable inferences derived from the evidence in the record. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

### B. Jurisdiction/Sovereign Immunity

Defendant argues that the court is without jurisdiction to hear this action because of the defendant's sovereign immunity to suit. However, contrary to defendant's position, it has been long established in this Circuit that collateral review of court-martial convictions may be obtained in federal court. In *Kauffman v. Secretary of the Air Force*, 415 F.2d 991 (D.C.Cir.1969), the court held that federal courts have jurisdiction to hear a claim seeking to have a court-martial conviction declared void even if the party seeking the remedy is not in custody and could thus not avail himself of the statutory habeas corpus remedy. In *Kauffman*, the plaintiff had been convicted by court-martial of several charges in connection with allegedly improper contacts with East German officials. Although his sentence originally included both confinement and dismissal from service, plaintiff had served out his sentence by the time of the federal action

---

**5.** Section 869(b) states in part that the findings or sentence of a summary court-martial may be modified or set aside, in whole or part, by the Judge Advocate General on the ground of newly discovered evidence, fraud

on the court, lack of jurisdiction over the accused or the appropriateness of the sentence.

10 U.S.C. § 869(b) (1994).

and been released. In the action, he sought to have the conviction declared void as resting upon violations of his constitutional rights. The court observed that, if plaintiff were in custody as a result of the conviction, he would clearly be entitled to collateral review by petitioning for a writ of habeas corpus under 28 U.S.C. § 2241. The court then held:

> There is no adequate reason for looking to habeas alone.... Liberty is of course important, but so are a man's career, his livelihood, his rights as a veteran, his status as a convicted criminal, and his reputation. To deny collateral attack to one not in confinement—the consequence of saying that habeas corpus is the only remedy—would be to deny the possibility of review by a constitutional court and ultimately by the Supreme Court, of the constitutional claims of servicemen like plaintiff who have not been sentenced to jail or who have been released.

*Id.* at 995. Based on this reasoning, the court held that a federal civilian court has jurisdiction over collateral review claims of military judgments whether or not the serviceman is in custody. *Id.* at 994.

In *Homcy v. Resor*, 455 F.2d 1345 (D.C.Cir.1971), the D.C. Circuit reaffirmed the availability of collateral review of court martial convictions where constitutional claims are alleged. Most recently, in *New v. Cohen*, 129 F.3d 639, 648 (D.C.Cir.1997), the court relied on *Kauffman* in support of the proposition that a serviceman could "bring an action in district court seeking nullification of his bad conduct discharge." *See also Williamson v. Secretary of the Navy*, 395 F.Supp. 146, 147 (D.D.C.1975) ("This Court has subject matter jurisdiction under 28 U.S.C. § 1331 to review a

military court martial in order to inquire into constitutional errors of the military tribunal and to determine whether military rulings conform to Supreme Court standards") (citing *Kauffman*).[6]

It is true that the D.C. Circuit has never held specifically that sovereign immunity is not a bar to hearing such suits. However, a sovereign immunity claim by the United States alleges a deficiency in jurisdiction. *Burkhart v. Washington Metropolitan Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C.Cir.1997). Thus, the fact that the D.C. Circuit has affirmatively and repeatedly held that jurisdiction exists compels the conclusion that sovereign immunity is no bar.

Defendant argues that the prior collateral review cases are distinguishable in that they involved alleged constitutional errors in the court-martial. However, the permissible scope of collateral review is an issue separate from whether the federal courts have jurisdiction to engage in such review at all. This Court therefore holds that sovereign immunity does not deprive the Court of jurisdiction over plaintiff's collateral review claims.

## C. Exhaustion of Remedies

Defendant argues that plaintiff's claim must be dismissed because he has failed to exhaust available administrative remedies. Specifically, defendant asserts that plaintiff could obtain a reversal of his conviction by filing an Article 138 "complaint of wrongs" pursuant to 10 U.S.C. § 938 (1994). Defendant asserts that if successful in voiding the conviction, plaintiff could then obtain the desired correction of his record from the Board of Correction of Naval Records pursuant to 10 U.S.C. § 1552 (1994).

**6.** Other circuits have also allowed for collateral review of court martial convictions. In *Hatheway v. Secretary of the Army*, 641 F.2d 1376, 1379 (9th Cir.1981), the plaintiff had been convicted of violating a military sodomy prohibition and sentenced to dismissal from the service. Like the instant plaintiff, he first appealed within the military structure and

then brought a federal action pursuant to 28 U.S.C. §§ 1331, 1361 and 2201, seeking a declaration that his conviction was invalid. The court held that "[t]he district court had equitable jurisdiction under 28 U.S.C. § 1331 and mandamus jurisdiction under § 1361." *Id.* at 1379.

Plaintiff does not argue that there is no obligation to exhaust administrative remedies before bringing a non-statutory collateral attack on a court-martial. However, he argues that there is no obligation to exhaust the procedures under 10 U.S.C. § 938 (1994) or 10 U.S.C. § 1552 (1994). He asserts that by filing an Article 69(b) application for JAG review, he has exhausted his military remedies.

■ It is established that a serviceman charged with crimes by military authorities must exhaust all available military remedies before seeking collateral relief in the federal courts. *Schlesinger v. Councilman,* 420 U.S. 738, 758, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *New v. Cohen,* 129 F.3d 639, 643 (D.C.Cir.1997) (finding servicemen are "barred from seeking collateral review of their court-martials before they have exhausted their appeals within the military system"); *Cooper v. Marsh,* 807 F.2d 988, 990 (Fed.Cir.1986) ("[B]efore seeking to collaterally attack [a] court martial conviction in the civilian courts [a plaintiff] must have exhausted all remedies available to him within the military"). However, courts have not required servicemen to exhaust procedures which could not grant them the relief they sought. *See Cooper, id.* (holding that "a plaintiff need seek review only before military tribunals empowered to provide the remedy sought" and thus "a plaintiff has exhausted his military remedies when he has attempted to obtain review in every forum which could provide meaningful relief".); *Baxter v. Claytor,* 652 F.2d 181, 185 (D.C.Cir. 1981) (holding in context of review of military actions that exhaustion requirement does not compel the performance of "clearly useless acts"). The principle issue disputed by the parties is whether motions pursuant to 10 U.S.C. §§ 1552 and 938 can provide plaintiff with the relief he requests, which is (1) to have his summary court-martial set aside and (2) to have all documents in his record resulting from the summary court-martial expunged.

■ Addressing § 1552 first, this provision provides in general that the Secretary of a military department, acting through a board of civilians, may correct records "when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (1994). However, in 1983, Congress significantly narrowed the Secretary's power to correct the records of court-martials specifically. Section 1552(f) now provides that the Secretary can correct the record of a court-martial only in two circumstances: (1) to reflect actions taken by other military "reviewing authorities" or (2) as "action on the sentence of a court-martial for the purposes of clemency." 10 U.S.C. § 1552(f) (1994).

On its face, this provision cannot provide plaintiff with the relief he is seeking since he is not asking for clemency and has not obtained reversal of his conviction through military channels. Not surprisingly, courts which have considered the post–1983 version of the remedy have held that a serviceman seeking to vacate a court-martial conviction need not exhaust this procedure. *Cooper,* 807 F.2d at 990–91 (where plaintiff was trying to have court-martial conviction declared void, court held that "[b]ecause of its limited powers, [the Army Board for Correction of Military Records] is incapable of providing meaningful relief for the constitutional violations"). *Cf. Williams v. Secretary of the Navy,* 787 F.2d 552, 559, n. 9 (Fed.Cir. 1986) (holding that exhaustion requirement mandated use of pre–1983 version of § 1552 for person seeking, *inter alia,* to correct records related to his court-martial conviction on grounds of unconstitutionality). This Court therefore concludes that plaintiff need not exhaust his § 1152 remedy before seeking collateral review of his court-martial conviction.

The next question is whether plaintiff was required to exhaust 10 U.S.C. § 938 (1994), entitled "Article 138 Complaint of Wrongs" (hereinafter "Article 138"). This section states:

Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

Defendant does not cite any case where a court held that Article 138 was available to overturn a court martial conviction. Defendant merely states without any support that "[u]nder Article 138, redress of a wrong is not limited in either the scope of the remedies or the bases for granting the remedies." Def.Mem. at 11. Thus, defendant argues, plaintiff could have petitioned the chain of command, up to the Secretary of the Navy, to set aside the conviction and grant the his requested relief.

Plaintiff disputes the availability of Article 138 to set aside a conviction. Plaintiff relies in part on interpretations of Article 138 in an article, Tompkins, *Article 138: A Resurrection*, 27 Jag.J. 463, 469–470 (1974), portions of which are attached to plaintiff's motion to cite supplemental authorities. Pl.Supp.Ex. A. In the article, Tompkins quotes from a JAG memorandum which stated that the "Judge Advocate General of the Army and the Air Force have held [Article 138] to be inapplicable to the field of discipline." Pl. Suppl.Ex. A at 469. The quoted JAG memorandum goes on:

> The Army JAG stated in JAGA 1955/8257 that: "It is the opinion of this Office that Article 138 does not cover the 'redress of wrongs' which the complaining member has suffered as the result of imposition of non-judicial pun-

ishment or conviction by court-martial, but rather is directed to the allegations that the member's commanding officer has deprived him of some property right, abused his command discretion, or otherwise dealt with him unjustly in a field other than discipline."

*Id.* Plaintiff has also provided an excerpt from one of the "Digest of Opinions" issued by the Judge Advocates General "for guidance within the respective armed forces and the information of all concerned." Pl.Supp.Ex. B (*Digest of Opinions—Judge Advocates General of the Armed Forces*, 1953–54). Among these opinions, it is stated that "[a] complaint of wrongs made under UCMJ, Art 138, does not authorize the Judge Advocate General or the Inspector General to reexamine a court-martial conviction which has become final and conclusive pursuant to Art 76 . . . inasmuch as Art 138 was intended as a means of protecting soldiers and officers from individual arbitrary or unjust actions of a commander and neither expands the review procedures of the Code nor limits the conclusive nature of the findings and sentence." Pl.Supp. B at 3 (digest citing JAGJ 1953/1012.29 (Jan.1953)). In absence of any authority indicating that an Article 138 petition may be used to attack a court-martial conviction, this Court will follow the JAG's interpretation. Because Article 138 is thus not available to attack a court-martial conviction, plaintiff was not required to exhaust the procedure. Therefore, the Court finds that plaintiff has exhausted every available forum that could provide meaningful relief.

### D. Review on the merits

This Court also concludes, however, that plaintiff's claims are not the sort of claims which are appropriate for collateral review, and that the claims fail on their merits. Collateral relief is available where the plaintiff alleges either a constitutional error, a lack of jurisdiction or an error "so fundamental as to have resulted in a miscarriage of justice." *Calley v. Callaway,*

519 F.2d 184, 199 (5th Cir.1975). Conversely, it is also established that collateral review is unavailable to attack findings of fact, *see Priest v. Secretary of the Navy,* 570 F.2d 1013, 1017 (D.C.Cir.1977); *Dodson v. Zelez,* 917 F.2d 1250, 1252–53 (10th Cir.1990) or to re-weigh the evidence. *Bowling v. U.S.,* 713 F.2d 1558, 1561 (Fed. Cir.1983).

The D.C. Circuit discussed the scope of collateral relief more generally in *Priest.* Relying on *Schlesinger v. Councilman,* 420 U.S. 738, 748, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975) for precedential support, the court viewed the general test as follows:

> Collateral relief from the consequences of a court-martial judgment is barred unless it appears that the judgment is void. Whether a judgment may be deemed void turns upon two factors: the nature of the alleged defect in the proceedings and the gravity of the harm from which relief is sought. These in turn must be considered in light of the deference Congress expected the military justice system to receive in the federal courts.

*Id.,* 520 F.2d at 1015 (finding that conviction resulting from constitutional error and leading to bad conduct discharge was subject to collateral review).

Plaintiff alleges two claims. First, he alleges due process error in the court-martial proceeding itself. Second, he alleges that defendants committed error when they failed to provide him with a post-conviction evidentiary hearing. The Court addresses these claims *seriatim.*

■ Plaintiff's claim of error in the court-martial proceeding has two separate parts. The first part alleges that he was deprived of due process during the hearing because he was not allowed to cross-examine Norton, the recruit who was abused by Williams, after Norton allegedly testified by phone that he reported abuse to the plaintiff and did not hear plaintiff report the abuse. Plaintiff also alleges that he was not allowed to call certain unnamed witnesses.

If true, these circumstances might establish violations of the plaintiff's constitutional right to due process. *Cf. Edwards v. Balisok,* 520 U.S. 641, 646, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (improper exclusion of all of inmate's witnesses in disciplinary hearing is "an obvious procedural defect"); *Bruton v. U.S.,* 391 U.S. 123, 130 n. 5, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ("to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law.") (citation and internal quotations omitted). However, the factual allegations underlying plaintiff's claim were reviewed by the JAG and rejected. *See* Def.Ex. A at 7 ("the accused has failed to establish his claim that the summary court officer denied his request for additional testimony and cross examination"). This conclusion was based on a full review of the record, including the submissions of new evidence by the plaintiff. "[W]hen a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Burns v. Wilson,* 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); *see also Kauffman,* 415 F.2d at 997 ("The [*Burns* ] Court's denial of relief on the merits of the serviceman's claims can be explained as a decision based upon deference to military findings of fact...."). Because reaching plaintiff's claim would require the Court to review the JAG's factual finding, it is outside the scope of collateral review. *See Dodson v. Zelez,* 917 F.2d 1250, 1254 (10th Cir.1990) ("Although this claim presents a substantial constitutional issue, ... it is not open to our review because it is essentially a factual question and was fully and fairly considered by the military courts.")

■ Further, even if reviewing these factual issues were appropriate, it would not be sufficient to conclude that a due process error had occurred, since such er-

rors are subject to harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 682, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("finding that the denial of the opportunity to cross-examine an adverse witness does not fit within the limited category ˙of constitutional errors that are deemed prejudicial in every case"). Under harmless error analysis, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Id.* at 681, 106 S.Ct. 1431.

■ In this case, even assuming that, had plaintiff been allowed to cross-examine Norton and call his unnamed witnesses, he would have established that he reported the abuse to his immediate superior, such reporting would not in and of itself establish his innocence. The JAG found that because plaintiff was required to report to a "Company Officer," he could not satisfy that order merely by reporting to a noncommissioned officer such as Staff Sergeant Flueter. Instead, he was required to report to the first commissioned officer up his chain of command. It is undisputed that plaintiff did not report to a commissioned officer.

■ In response, plaintiff raises the second part of his first claim, arguing that even if he was technically in violation of the general order, he should have been found not guilty due to the defense of "obedience to orders." Under the Manual for Court–Martials, it is a defense to any offense "that the accused was acting pursuant to orders unless the accused knew the orders to be unlawful or a person of ordinary sense and understanding would have known the orders to be unlawful." *Manual For Courts–Martial*, 49 F.R. 17152, at Rule 916(d). "Once a defense ... is placed in issue by some evidence, the prosecution [has] the burden of proving beyond a reasonable doubt that the defense did not exist." *Id.*, at Rule 916(b). Plaintiff asserts, as a basis for this defense, that he had been instructed by a superior to report abuse by reporting to his immediate supervisor.

This part of plaintiff's claim only exacerbates the intrusion into areas to which the military is owed deference. Plaintiff's argument asks the Court to vacate a court-martial on the grounds that plaintiff has demonstrated a valid defense to a military general order under military law. Thus, the Court would have to make additional factual conclusions but this time in the application of purely military law and procedure. Thus, the nature of the alleged defect and the deference owed to the military argue even more strongly against collateral review.

Moreover, even if the Court were to ignore the impropriety of collaterally ruling on an issue of military law, dismissal of plaintiff's claim would be proper because he has not presented any evidence that the court-martial was required to consider an "obedience-to-orders" defense. Under the Manual, special defenses such as obedience to orders must be specifically raised by defendant or else they are waived. *See* R.C.M. 801(f) ("Failure by a party to raise defenses ... shall constitute waiver thereof, but the military judge for good cause shown may grant relief from the waiver."). There is no evidence that plaintiff ever raised this defense at his court-martial, or at any of his subsequent review proceedings (including his two "request masts," his § 1105 motion or his Article 69(b) application). Therefore, he was not in any event entitled to a finding of innocence on that basis. In sum, the Court finds that the asserted errors in the court-martial conviction do not establish a valid claim for collateral relief.

Plaintiff's second claim is that, following his conviction and his subsequent R.C.M. 1105 submission, he was not given a full evidentiary hearing on his allegation that he had reported the abuse. Instead, Stewart merely ordered Kowalski to conduct his own investigation into plaintiff's allega-

tions, and plaintiff was given no opportunity to participate.

 This claim is clearly insufficient to justify collateral review. It does not raise a constitutional issue or jurisdictional question, nor does it present any fundamental error. Plaintiff alleges that, where evidentiary questions are raised on appeal from a court-martial conviction, a defendant is entitled to a *"DuBay"* hearing. The *DuBay* hearing, recognized in *United States v. DuBay*, 37 C.M.R. 411 (1967), is essentially an evidentiary hearing to resolve collateral factual issues, usually ordered by an appellate military court and conducted by a lower adjudicatory body, e.g. the convening officer, to aid in appellate review. There is some precedent for finding that it can be ordered by the convening officer *sua sponte*. *See U.S. v. Ruppel*, 45 M.J. 578, 581 (A.F.Ct.Crim. App.1997). However, there is no case law suggesting that the defendant has a right under either constitutional or military law to such a hearing or that the convening officer may not conduct a more limited form of investigation.

 Indeed, there is no indication that Stewart's ordering a more limited investigation was error of any kind, let alone constitutional error. Stewart ordered the investigation pursuant to R.C.M. 303, which states:

> Upon receipt of information that a member of the command is accused or suspected of committing an offense or offenses triable by court-martial, the immediate commander shall make or cause to be made a preliminary inquiry into the charges or suspected offenses.

Here, the investigation was called to investigate charges that Cothran reported abuse to Fleuter and Gridley. Since this would imply that they both lied about it at the court-martial and that they were themselves guilty of failure to report abuse, the rule was clearly applicable and no error is evident.

Further, as noted above, plaintiff needs to demonstrate how the alleged procedural error caused him prejudice. This investi-

gation, whatever its procedures, could not possibly have established prejudice because it was brought only to investigate the question of whether plaintiff reported abuse to his immediate superior and his replacement. As noted, even if plaintiff were able to establish this reporting, he would not establish his innocence, and hence he has not demonstrated prejudicial error. Accordingly, summary judgment is granted to the defendant on plaintiff's claim seeking non-statutory collateral review.

## E. APA Claim

Plaintiff asserts that, as an alternative route, he is entitled to collateral review of the JAG decision pursuant to section 706 of the APA, 5 U.S.C. § 706 (1994). This provision states, *inter alia*, that the reviewing court shall set aside an agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A).

 Defendant argues that review under the APA is precluded for two reasons. First, defendant argues that review is unavailable because the matter is committed to agency discretion. Under 5 U.S.C. § 701 (1994), the APA is inapplicable to agency action that "is committed to agency discretion by law." *Id.,* § 701(a)(2). However, this exception only applies where the governing statute provides "absolutely no guidance" in how the relevant decision is to be made. *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C.Cir.1985). Here, the governing provision, 10 U.S.C. § 869(b) (1994), does provide standards. Findings or sentences of a summary court-martial may be modified or set-aside "on the ground of newly discovered evidence, fraud on the court, lack of jurisdiction over the accused or the offense, error prejudicial to the substantial rights of the accused, or the appropriateness of the sentence." *Id.,* § 869(b). Accordingly, the § 701(a)(2) exception is inapplicable.

Second, defendant argues that under the terms of the APA, a court-martial is never

subject to APA review. It is true that the APA provides review only of "*agency* action, findings, and conclusions . . .," 5 U.S.C. § 706 (1994) (emphasis added), and "agency" is expressly defined as *not* including "courts martial and military commissions." 5 U.S.C. § 701(b)(F) (1994). However, plaintiff seeks review of the decision of the reviewing JAG officer, not that of the court-martial. Although there is no case law on point, it is arguably the case that the term "court-martial" in the APA should be construed to mean only the actual court-martial body and its decisions and that JAG review is thus subject to APA.

■ Assuming *arguendo* that this is so, the Court finds that plaintiff's APA claim fails as a matter of law on the merits. Critically, the APA claim seeks review of the JAG decision, not that of the underlying court-martial. Thus, the question is only whether the JAG's review of plaintiff's Article 69(b) application violated the APA standard of review. Plaintiff has not pointed to anything arbitrary or erroneous in the Article 69(b) review specifically, apparently assuming that an error below is automatically equivalent to an error above. However, the JAG's review addressed the arguments raised in plaintiff's application for review. The question then is only whether the JAG's review of *plaintiff's application* violated the APA.

Having considered the JAG review, the Court finds nothing either arbitrary, capricious or contrary to law. The JAG thoroughly reviewed the facts, and carefully considered each of the arguments plaintiff raised in his application. None of the reasons the JAG proffered for rejecting these arguments are either arbitrary or contrary to law.

It is clear from the reviewing documents that the primary reason for rejecting plaintiff's application was that, even if plaintiff could prove that he informed his immediate superior and his replacement, he would still be guilty of violating the general order. The only argument plaintiff presented which addressed his failure to report abuse to a "Company Officer" was his assertion that this rule was modified by company practice. The JAG rejected this argument: "It is well established that ignorance of a lawful general order is not a defense to a violation of the same, nor can a general order be modified by anyone other than that authority who ordered the same." Def.Ex. A at 6. While this determination is harsh, there is no basis for finding that it is arbitrary, capricious or contrary to law.

*IV. Conclusion*

For the reasons discussed, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.