*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Anthony A. ANDERSON, Master Sergeant**
United States Air Force, Appellant

**No. 22-0193**
Crim. App. No. 39969

Argued October 25, 2022—Decided June 29, 2023

Military Judge: Willie J. Babor

For Appellant: *William E. Cassara,* Esq. (argued); *Major Jenna M. Arroyo* (on brief).

For Appellee: *Mary Ellen Payne*, Esq. (argued); *Colonel Naomi P. Dennis, Lieutenant Colonel Thomas J. Alford, Lieutenant Colonel Matthew J. Neil*, and *Major Zachary T. West* (on brief).

Amicus Curiae for Appellant: *Barbara E. Bergman*, Esq., and *Donald G. Rehkopf Jr.*, Esq. (on behalf of the National Association of Criminal Defense Lawyers) (on brief).

Amicus Curiae for Appellee: *Peter Coote*, Esq. (on behalf of Protect Our Defenders) (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Senior Judge EFFRON joined.

————————

Judge HARDY delivered the opinion of the Court.

This case asks us to decide whether courts-martial defendants have a right to a unanimous guilty verdict under the Sixth Amendment, the Fifth Amendment Due Process Clause, or the Fifth Amendment component of equal protection. We hold that they do not. Accordingly, we affirm the judgment of the United States Air Force Court of Criminal Appeals (AFCCA).

## I. Background

The Government charged Appellant with two specifications of attempted sexual abuse of a child in connection with Appellant's online communications with fictitious thirteen-year-old "Sara." Before Appellant's trial, defense counsel filed a motion requesting that the court: (1) require a unanimous verdict for any finding of guilty; or (2) instruct the members that the president of the panel must announce whether any finding of guilty was the result of a unanimous vote. The military judge denied the motion in a written ruling supplemented after the court-martial adjourned. A panel composed of officers and enlisted members convicted Appellant, contrary to his pleas, of both specifications in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880 (2018). Appellant elected to be sentenced by the military judge, who sentenced Appellant to twelve months of confinement for each offense, to run concurrently, reduction to E-1, and a dishonorable discharge. The convening authority took no action on the findings or sentence. The AFCCA affirmed. *United States v. Anderson*, No. ACM 39969, 2022 CCA LEXIS 181, at *61, 2022 WL 884314, at *21 (A.F. Ct. Crim. App. Mar. 25, 2022) (unpublished). We granted review of the following issue:

> Whether Appellant was deprived of his right to a unanimous verdict as guaranteed by the Sixth Amendment, the Fifth Amendment's due process clause, and the Fifth Amendment's right to equal protection.

*United States v. Anderson*, 82 M.J. 440, 440-41 (C.A.A.F. 2022) (order granting review).

## II. Discussion

Nonunanimous verdicts have been a feature of American courts-martial since the founding of our nation's military justice system. *See* William Winthrop, *Military Law and Precedents* 377 (2d ed., Government Printing Office 1920) (1895); Article XXXVII of the American Articles of War of 1775, *reprinted in* Winthrop, *supra*, at 956 [hereinafter 1775 Articles of War]; Section XIV, Article 10 of the American Articles of War of 1776, *reprinted in* Winthrop, *supra*, at 968 [hereinafter 1776 Articles of War]. Congress chose to maintain nonunanimous verdicts when it enacted the UCMJ in 1950, Act of May 5, 1950, ch. 169, Pub. L. No. 81-506, 64 Stat. 107, 125, and has continued to do so through the most recent updates to court-martial voting requirements in the Military Justice Act of 2016. National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5234, 130 Stat. 2000, 2916 (2016).

Consistent with this long tradition, the UCMJ expressly authorizes a court-martial to convict a servicemember subject to a general or special court-martial of a criminal offense "by the concurrence of at least three-fourths of the members present when the vote is taken." Article 52(a)(3), UCMJ, 10 U.S.C. § 852(a)(3) (2018). Appellant's conviction comports with this requirement. Appellant nonetheless contends that he is entitled to relief on the grounds that Article 52(a)(3), UCMJ, contravenes his right to a unanimous verdict under the Fifth and Sixth Amendments. Because we disagree, we affirm the judgment of the AFCCA.

### A. The Sixth Amendment

As relevant here, the Sixth Amendment demands that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. As noted in its recent decision in *Ramos v. Louisiana*, the Supreme Court "has, repeatedly and over many years, recognized that the Sixth Amendment requires unanimity." 140 S. Ct. 1390, 1396 (2020); *see also id.* at 1397-99 (collecting cases). In *Ramos*, the Supreme Court observed that "the Sixth Amendment affords

a right to 'a trial by jury as understood and applied at the common law, . . . includ[ing] all the essential elements as they were recognized in this country and England when the Constitution was adopted.' " *Id.* at 1397 (alterations in original) (quoting *Patton v. United States*, 281 U.S. 276, 288 (1930), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78, 90 (1970)). One of those essential elements of a trial by jury was "that the verdict should be unanimous." *Id.* (quoting *Patton*, 281 U.S. at 288) (citing *Andres v. United States*, 333 U.S. 740, 748 (1948)).

If the Sixth Amendment right to a jury trial applied in the military justice system, Appellant would have a strong argument that he had a constitutional right to a unanimous verdict at his court-martial. *See Andres*, 333 U.S. at 748 ("Unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply."). The trouble for Appellant, however, is that the Supreme Court has repeatedly stated that the Sixth Amendment right to a jury trial does not apply to courts-martial. In *Ex parte Milligan*, the Supreme Court explained "the right of trial by jury . . . is preserved to every one accused of [a] crime who is not attached to the army, or navy, or militia in actual service." 71 U.S. 2, 123 (1866).[1] Later, in *Ex parte Quirin*, the Supreme Court reiterated that " 'cases arising in the land or naval forces' are . . . . deemed excepted by implication from the Sixth [Amendment]." 317 U.S. 1, 40 (1942); *see also Whelchel v. McDonald*, 340 U.S. 122, 127 (1950) ("The right to trial by jury guaranteed by the Sixth Amendment is not applicable to trials by courts-martial or military

---

[1] The Supreme Court acknowledged that although the Fifth Amendment expressly exempts cases arising in the land or naval forces from its grand jury requirement, the Sixth Amendment contains no such exception. *Ex parte Milligan*, 71 U.S. at 123 (comparing the text of the Fifth and Sixth Amendments). Nevertheless, after noting this disparity, the Supreme Court concluded that "the framers of the Constitution, doubtless, meant to limit the right of trial by jury, in the sixth amendment, to those persons who were subject to indictment or presentment in the fifth." *Id.*

commissions."). Following the Supreme Court's lead, this Court has long held the same. *See, e.g.*, *United States v. Begani*, 81 M.J. 273, 280 n.2 (C.A.A.F. 2021) (explaining that members of the land and naval forces do not have a Sixth Amendment right to a jury trial); *United States v. Easton*, 71 M.J. 168, 175 (C.A.A.F. 2012) ("[T]here is no Sixth Amendment right to trial by jury in courts-martial."); *United States v. Kemp*, 22 C.M.A. 152, 154, 46 C.M.R. 152, 154 (1973) (explaining the same in the context of panel member appointment).

### 1. The Supreme Court's decisions exempting the military justice system from the Sixth Amendment right to a jury trial cannot be dismissed as dicta

Appellant argues that all the Supreme Court cases stating that there is no Sixth Amendment right to a jury trial in the military justice system can be dismissed as dicta. We disagree. Even if we were inclined to accept Appellant's premise—that the Supreme Court has never been presented with or squarely answered the question whether the Sixth Amendment jury right applies to courts-martial—we cannot ignore the fact that the lack of such a right has been a central component of a series of landmark Supreme Court military justice cases. For example, in *United States ex rel. Toth v. Quarles*, the Supreme Court held that the Constitution forbids Congress from subjecting a former servicemember to trial by court-martial after the servicemember had severed all relationships to the military. 350 U.S. 11, 23 (1955). Key to the Supreme Court's reasoning was the fact that the former servicemember would be denied his Sixth Amendment right to a jury trial in a court-martial. *Id.* at 17-18 (explaining the "great difference between trial by jury and trial by selected members of the military forces").

Two years later in *Reid v. Covert*, the Supreme Court once again considered the constitutional limits of the military justice system, holding that Congress could not subject the accompanying civilian dependents of overseas servicemembers to courts-martial. 354 U.S. 1, 5 (1957). Justice Black's plurality opinion noted that "[e]very extension of

military jurisdiction . . . acts as a deprivation of the right to jury trial and of other treasured constitutional protections." *Id.* at 21. The opinion further observed that courts-martial do not give an accused the same protections that exist in the civilian courts, and that "[l]ooming far above all other deficiencies of the military trial, of course, is the *absence of trial by jury* before an independent judge after an indictment by a grand jury." *Id.* at 37 (emphasis added); *see also id.* at 37 n.68 ("The exception in the Fifth Amendment, of course, provides that grand jury indictment is not required in cases subject to military trial and this exception has been read over into the Sixth Amendment so that the requirements of jury trial are inapplicable.").[2]

The same concern led the Supreme Court a decade later in *O'Callahan v. Parker* to hold that servicemembers could only be tried by court-martial for crimes that were connected to their military service. 395 U.S. 258, 272 (1969), *overruled by Solorio v. United States*, 483 U.S. 435 (1987). Once again, the Supreme Court's decision was based on its view that there were fundamental differences between military and civilian trials, including the absence of a Sixth Amendment right to a jury trial in the military. *Id.* at 261-62 ("If the case does not arise 'in the land or naval forces,' then the accused gets first, the benefit of an indictment by a grand jury and second, a trial by jury before a civilian court as guaranteed by the Sixth Amendment . . . .").

---

[2] *Reid* specifically addressed civilian dependents who had been charged with a capital offense. 354 U.S. at 4. Three years later, in a series of companion cases, the Supreme Court further held that Congress could not subject the civilian dependents of overseas servicemembers to courts-martial when charged with a noncapital offense, *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 249 (1960), nor civilian military employees stationed overseas, whether charged with a capital, *Grisham v. Hagan*, 361 U.S. 278, 280 (1960), or noncapital offense, *McElroy v. United States ex rel. Guagliardo*, 361 U.S. 281, 282, 284 (1960). In each of these cases the Supreme Court again emphasized the nonapplicability of the Sixth Amendment right to a jury trial at a court-martial. *Singleton*, 361 U.S. at 249; *Grisham*, 361 U.S. at 280; *Guagliardo*, 361 U.S. at 284.

Although the Supreme Court overruled *O'Callahan* eighteen years later, *Solorio*, 483 U.S. at 450-51, nothing in that opinion undermined the long-standing principle that the Sixth Amendment right to a jury trial does not apply in the military justice system. Rather, *Solorio* rested its holding on *O'Callahan*'s dubious treatment of historical practice and the plain language of the constitutional grant of power to Congress "to make rules for the 'Government and Regulation of the land and naval Forces.'" *Solorio*, 483 U.S. at 441-42 (quoting U.S. Const. art. I, § 8, cl. 14).

Even if the Supreme Court's statements exempting the military justice system from the Sixth Amendment's right to a jury trial in *Ex parte Milligan*, *Ex parte Quirin*, and *Whelchel* technically qualify as nonbinding dicta, the Supreme Court has never treated them as such. To the contrary, the Supreme Court has repeatedly relied on the principle that courts-martial are fundamentally different from civilian trials because of that exemption. It would be disingenuous for this Court to ignore over a century of consistent guidance from the Supreme Court about the applicability of the Sixth Amendment to military trials.

### 2. The right to an impartial court-martial panel does not guarantee a unanimous verdict

Although the Sixth Amendment right to a jury trial has never applied in the military justice system, an accused servicemember's right to be tried by impartial panel members has long been a "cornerstone of the military justice system." *United Stated v. Hilow*, 32 M.J. 439, 442 (C.M.A. 1991); *see* Article XXXV, 1775 Articles of War, *supra*, at 956 ("All the members of a court-martial, are to behave with calmness, decency, and impartiality . . . ."); Article 69 of the American Articles of War of 1806, *reprinted in* Winthrop, *supra*, at 982 (requiring members to swear to "'administer justice . . . without partiality, favor, or affection'"); *United States v. Modesto*, 43 M.J. 315, 318 (C.A.A.F. 1995) ("Impartial court-members are a *sine qua non* for a fair court-martial."). While Congress has long guaranteed this right via statute, this Court has also recognized that "[a]s a matter of due process, an accused has a constitutional right, as

well as a regulatory right, to a fair and impartial panel." *United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001) (first citing *United States v. Mack*, 41 M.J. 51, 54 (C.M.A. 1994); and then citing Rule for Courts-Martial 912(f)(1)(N), *Manual for Courts-Martial, United States* (2000 ed.)). Appellant argues that in *Ramos*, "the Supreme Court explicitly equated the term impartial with the term unanimity." Brief for Appellant at 14, *United States v. Anderson*, No. 22-0193 (C.A.A.F. Aug. 24, 2022). As a result, Appellant contends, he has a right to a unanimous verdict as part of his right to an impartial panel.[3]

*Ramos* held that the Sixth Amendment right to a jury trial, as incorporated to the states under the Fourteenth Amendment, requires unanimous verdicts to convict defendants of serious offenses. 140 S. Ct. at 1397. The Supreme Court did not explicitly equate impartiality with unanimity, nor hold that the Sixth Amendment's impartiality requirement commands unanimity. In the Supreme Court's own words, "[T]he Sixth Amendment's *right to a jury trial* requires a unanimous verdict to support a conviction in federal court, it requires no less in state court." *Id.* (emphasis added).

Appellant points to the following language in *Ramos* to support his argument: "Wherever we might look to determine what the term 'trial by an impartial jury' meant at the time of the Sixth Amendment's adoption . . . the answer is unmistakable. A jury must reach a unanimous verdict in order to convict." *Id.* at 1395. However, each time

---

[3] Appellant does not contend that a court-martial panel is a "jury" within the meaning of the Sixth Amendment, nor that he was entitled to a jury trial—and all that that would require under the Sixth Amendment—as opposed to a trial by a court-martial panel. Appellant explicitly acknowledges that "[t]he issue is not whether Appellant has a constitutional right to a jury trial; rather, the issue is whether Article 52(a)(3), UCMJ . . . is unconstitutional under the Sixth Amendment following *Ramos*, or under the Due Process and/or Equal Protection Clauses of the Fifth Amendment." Reply Brief for Appellant at 11, *United States v. Anderson*, No. 22-0193 (C.A.A.F. Sept. 30, 2022).

the majority opinion uses the phrase "trial by an impartial jury," the phrase is in quotation marks, indicating it is meant to be a quotation from the Sixth Amendment, rather than a deliberate emphasis on the word "impartial." *See id.* at 1395-96, 1400. Furthermore, at several points in the opinion, the majority refers only to the right to a jury trial as requiring a unanimous verdict, without reference to impartiality at all. *See, e.g.*, *id.* at 1394, 1397. At no point in the opinion does the Supreme Court consider what the word "impartial" means or what is required for a jury to be "impartial." In the absence of any analysis or discussion of any kind about what the Sixth Amendment's guarantee of an "impartial" jury requires, we are not persuaded by Appellant's argument that the Supreme Court held—sub silentio—that only a unanimous jury can be impartial.

Nor do we view "impartial" as synonymous with "unanimous." The Government persuasively argues that impartiality and unanimity are distinct concepts that address different characteristics of a fair jury. In support of its argument, the Government points first to Justice Kavanaugh's *Ramos* concurrence, where he recognized that impartiality and unanimity are complementary concepts. *See id.* at 1418 (Kavanaugh, J., concurring in part) ("After all, the requirements of unanimity and impartial selection thus complement each other in ensuring the fair performance of the vital functions of a criminal court jury." (internal quotation marks omitted) (citation omitted)). The Government also references multiple Founding Era dictionaries to illustrate that the drafters of the Sixth Amendment would not have understood "impartial" and "unanimous" to have the same meaning.[4] Appellant offered no

---

[4] The dictionaries cited by the Government universally define "impartial" as meaning just and unbiased and "unanimous" as being of one mind. *See, e.g.*, James Barclay, *A Complete and Universal English Dictionary* (1792) (defining impartial as "just; without any bias or undue influence" and unanimous as "of one mind; agreeing in opinion"); Samuel Johnson, *A Dictionary of the English Language* (10th ed. 1792) (defining impartial as "[e]quitable; free from regard or party; indifferent; disinterested;

rebuttal to these specific arguments other than to point out once again that the majority opinion in *Ramos* repeatedly used the quoted phrase "trial by an impartial jury."

We also note that the concept of impartiality in courts-martial dates to the earliest American Articles of War that predate the Sixth Amendment. *See* Article XXXV, 1775 Articles of War, *supra*, at 956 ("All the members of a court-martial, are to behave with calmness, decency, and impartiality . . . ."); Section XIV, Article 3, 1776 Articles of War, *supra*, at 968 (requiring members to swear to " 'administer justice . . . without partiality, favor, or affection' "). The simultaneous presence of an impartiality requirement and nonunanimous verdicts in the original Articles of War illustrates that at no time during the entire history of the American military justice system has impartiality been understood to require unanimous verdicts.

We agree with Appellant that *Ramos* held that unanimity is an essential element of a Sixth Amendment jury trial, but we disagree that it further held that it is also an essential element of an impartial factfinder. In the absence of a Sixth Amendment right to a jury trial in the military justice system, Appellant had no Sixth Amendment right to a unanimous verdict in his court-martial.

### B. Fifth Amendment Due Process

Even if the Sixth Amendment right to a jury trial does not apply to the military justice system, Appellant argues that he is still guaranteed the right to a unanimous verdict by the Due Process Clause of the Fifth Amendment. *See* U.S. Const. amend. V ("No person shall . . . be deprived of

---

equal in distribution of justice; just" and unanimous as "[b]eing of one mind; agreeing in design or opinion"); 1 John Ash, *The New And Complete Dictionary of the English Language* (1775) (defining impartial as "[f]ree from any undue regard to party, equitable, just, disinterested"); 2 John Ash, *The New And Complete Dictionary of the English Language* (1775) (defining unanimous as "[h]aving one mind, agreeing in opinion, agreeing in a design"). These definitions comport with our own understanding of these terms.

life, liberty, or property, without due process of law . . . .").
Appellant asserts that the guarantee of a unanimous ver-
dict is a vital and essential constitutional right that is fun-
damental to the American scheme of justice.

To succeed in a due process challenge to a statutory
court-martial procedure, an appellant must demonstrate
that " 'the factors militating in favor of [a different proce-
dure] are so extraordinarily weighty as to overcome the bal-
ance struck by Congress.' " *Weiss v. United States*, 510 U.S.
163, 177-78, 181 (1994) (quoting *Middendorf v. Henry*, 425
U.S. 25, 44 (1976)). When Congress acts pursuant to its
power "to make Rules for the Government and Regulation
of the land and naval Forces," U.S. Const. art. I, § 8, cl. 14,
"judicial deference . . . is at its apogee." *Rostker v. Gold-
berg*, 453 U.S. 57, 70 (1981).

Here, the factors militating in favor of the right to a
unanimous verdict are not so weighty as to overcome the
balance struck by Congress in Article 52, UCMJ. The Su-
preme Court's analysis in *Weiss* is instructive. In that case,
petitioners raised a due process challenge to the lack of a
fixed term for military judges in Article 26, UCMJ, 10
U.S.C. § 826 (1988). *Weiss*, 510 U.S. at 176. The Court held
that the factors supporting a fixed term for military judges
did not overcome the balance struck by Congress based on
two primary considerations: "[t]he absence of tenure as a
historical matter in the system of military justice, and the
number of safeguards in place to ensure impartiality." *Id.*
at 181. Looking to those same considerations in this con-
text, both support the conclusion that the factors militating
in favor of unanimous verdicts do not outweigh the balance
struck by Congress in Article 52, UCMJ.

First, historical evidence establishes that for more than
two centuries, courts-martial verdicts have not been sub-
ject to a unanimity requirement. Both the 1775 and 1776
American Articles of War expressly provided for majority

convictions in regimental courts-martial.[5] *See* Article XXXVII, 1775 Articles of War, *supra*, at 956; Section XIV, Article 10, 1776 Articles of War, *supra*, at 968. Although the early Articles of War did not specify the required votes to convict in a general court-martial, Winthrop notes that "the result—in all cases, whether grave or slight, and whether capital or other—is determined by a majority of the votes." Winthrop, *supra*, at 377. In 1920, Congress formally codified the required number of votes for conviction as two-thirds,[6] which the UCMJ similarly required upon its enactment in 1950. Act of June 4, 1920, Pub. L. No. 66-242, 41 Stat. 754, 795-96; Act of May 5, 1950, 64 Stat. at 125.[7] Most recently, in the Military Justice Act of 2016, Congress updated Article 52, UCMJ, to require at least a three-fourths majority vote for conviction. § 5234, 130 Stat. at 2916.[8] While historical practice is not dispositive, it "is

---

[5] Regimental courts-martials were "instituted for the trial and punishment of 'small offences.'" Winthrop, *supra*, at 485 n.23 (quoting Article XXXVII, 1775 Articles of War, *supra*, at 956, and Section XIV, Article 10, 1776 Articles of War, *supra*, at 968).

[6] The two-thirds requirement in the 1920 Articles of War did not apply to the Navy. *See* Act of June 4, 1920, 41 Stat. at 787. Until the enactment of the UCMJ, "the Navy was still governed by a code passed in 1862 and that was based upon 17th century British naval law." Walter B. Huffman & Richard D. Rosen, *Military Law: Criminal Justice and Administrative Process* § 1:25 (2022-2023 ed.).

[7] Both the 1920 and 1950 enactments required unanimous votes for conviction of an offense for which the death penalty was mandatory. Act of June 4, 1920, 41 Stat. at 795-96; Act of May 5, 1950, 64 Stat. at 125.

[8] Under the updated Article 52, UCMJ, "[a] sentence of death requires (A) a unanimous finding of guilty of an offense [under the UCMJ] expressly made punishable by death and (B) a unanimous determination by the members that the sentence for that offense shall include death." Article 52(b)(2), UCMJ. These provisions demonstrate that Congress continues to give specific attention to the proper voting requirements for courts-martial and is making deliberate decisions about when to require unanimous verdicts.

a factor that must be weighed," and "historical maintenance . . . 'suggests the absence of a fundamental fairness problem.'" *Weiss*, 510 U.S. at 179 (quoting *United States v. Graf*, 35 M.J. 450, 462 (C.M.A. 1992)). More than two centuries of nonunanimous verdicts in courts-martial weigh against Appellant's due process challenge.

Second, several unique safeguards in the military justice system address Appellant's concerns about the impartiality and fairness of courts-martial without unanimous verdicts. For example, Article 51(a), UCMJ, requires voting by secret ballots, which protects junior panel members from the influence of more senior members. 10 U.S.C. § 851(a) (2018). Appellants in the military justice system are also entitled to factual sufficiency review on appeal, ensuring panel verdicts are subject to oversight. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2018).[9] While these safeguards are not identical to those present in the civilian system, they need not be. As the Supreme Court has recognized, "'the tests and limitations [of due process] may differ because of the military context.'" *Weiss*, 510 U.S. at 177 (alteration in original) (quoting *Rostker*, 453 U.S. at 67). Preserving impartiality and fairness does not require identical safeguards in the military and civilian justice systems.

"Congress has primary responsibility for the delicate task of balancing the rights of servicemen against the needs of the military." *Solorio*, 483 U.S. at 447. In light of this deferential standard, two centuries of historical maintenance, and the other safeguards that Congress has, in its sound discretion, put in place to preserve impartiality, we hold that the factors militating in favor of unanimous verdicts are not so extraordinarily weighty as to overcome the balance struck by Congress in Article 52, UCMJ.

---

[9] We acknowledge that Congress amended the language of Article 66(d)(1), UCMJ, in the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 542, 134 Stat. 3388, 3611-12. The amendment does not change our analysis of this issue.

Appellant makes two additional due process arguments that we find unpersuasive. First, Appellant argues that by incorporating the Sixth Amendment right to a unanimous jury verdict to the states in *Ramos*, "the Court implicitly recognized that due process of law . . . guarantees the right to a unanimous verdict." According to Appellant, a prerequisite for incorporation is finding that a right is required as a matter of Fourteenth Amendment due process, and because Fourteenth and Fifth Amendment due process are coextensive, Fifth Amendment due process requires unanimous guilty verdicts. However, Appellant misconceives incorporation doctrine and its effect on Fifth Amendment due process. As the United States Court of Appeals for the District of Columbia Circuit has explained, under incorporation, a right " 'is *made applicable* to the States by the Fourteenth Amendment.' The right . . . is not, however, converted into a procedural due process right by incorporation." *Sanford v. United States* 586 F. 3d 28, 35 (D.C. Cir. 2009) (quoting *Ballew v. Georgia*, 435 U.S. 223, 224 n.1 (1978)) (holding that incorporation of the Sixth Amendment right to a jury trial under the Fourteenth Amendment does not create a due process right to a jury trial that would apply directly to courts-martial). The Supreme Court's incorporation of the right to a unanimous verdict to the states in *Ramos* made that right applicable to the states; it did not convert unanimous verdicts into a procedural due process right.

Second, Appellant argues that "a unanimous verdict is part and parcel of the Fifth Amendment right to have one's guilt proved beyond a reasonable doubt," and that non-unanimous verdicts unconstitutionally lower the Government's burden of proof. Brief for Appellant at 33, *United States v. Anderson*. Appellant conflates unanimous verdicts and the beyond-a-reasonable-doubt standard by misconceiving juries as reaching their verdicts as an entity, rather than as a group of individuals. To the contrary, the reasonable doubt standard refers to reasonable doubt in the mind of the individual juror. *See Johnson v. Louisiana*, 406 U.S. 356, 362-63 (1972), *overruled by Ramos*, 140 S. Ct.

1390;[10] *Tibbs v. Florida,* 457 U.S. 31, 42 n.17 (1982) ("Our decisions also make clear that disagreements among jurors or judges do not themselves create a reasonable doubt of guilt."). This must be the case, because if reasonable doubt were evaluated based on the group of jurors, there could be no hung juries in the civilian system—one juror with reasonable doubt would require an acquittal, not a hung jury. *Johnson*, 406 U.S. at 363. Consequently, nonunanimous verdicts do not run afoul of the Due Process Clause's requirement that the government prove the defendant's guilt beyond a reasonable doubt.

### C. Fifth Amendment Equal Protection

Finally, Appellant argues that his nonunanimous panel verdict violated his Fifth Amendment right to equal protection because he is being denied a fundamental right—the Sixth Amendment right to a unanimous jury verdict—that is guaranteed to civilians. Arguing that servicemembers facing courts-martial and civilians facing criminal trials in state and federal courts are similarly situated, Appellant asserts that Congress's authorization of nonunanimous verdicts in Article 52, UCMJ, cannot withstand strict scrutiny. Even if he is not being denied a fundamental right, Appellant argues that Congress has no rational basis for denying servicemembers the right to a unanimous verdict. We disagree.

The Equal Protection Clause of the Fourteenth Amendment prohibits denying to "any person . . . the equal protection of the laws." U.S. Const. amend. XIV, § 1. The " 'right to equal protection is part of due process under the Fifth

---

[10] Although *Ramos* overturned *Johnson*'s holding that the Fourteenth Amendment does not require unanimous jury verdicts, *Ramos* was decided based on incorporation of the Sixth Amendment via the Fourteenth Amendment. *Ramos*, 140 S. Ct. at 1397. The case did not challenge *Johnson*'s holding that the Fourteenth Amendment standing alone does not require unanimous verdicts, nor disturb the rationale that a nonunanimous verdict "is not in itself equivalent to a failure of proof by the State, nor does it indicate infidelity to the reasonable-doubt standard." *Johnson*, 406 U.S. at 362.

Amendment, and so it applies to courts-martial, just as it does to civilian juries.'" *United States v. Witham*, 47 M.J. 297, 301 (C.A.A.F. 1997) (citations omitted) (quoting *United States v. Santiago-Davila*, 26 M.J. 380, 389-90 (C.M.A. 1988)). Equal protection does not prohibit all classifications, indeed "most laws differentiate in some fashion between classes of persons." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

The threshold question in equal protection analysis is whether the groups treated differently by the law are similarly situated. *Begani*, 81 M.J. at 280. Distinctions between similarly situated groups must satisfy the rational basis test unless the distinction implicates either a suspect class or a fundamental right, in which case strict scrutiny applies. *Nordlinger*, 505 U.S. at 10 (first citing *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439-441 (1985); and then citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).

This Court has previously declined to find that servicemember and civilian defendants are similarly situated. In *United States v. Akbar*, this Court rejected the argument that the failure to apply civilian death penalty protocols in the military justice system violates equal protection. 74 M.J. 364, 405-06 (C.A.A.F. 2015). The Court held that the appellant, "as an accused servicemember, was not similarly situated to a civilian defendant." *Id.* at 406. The Supreme Court, moreover, has repeatedly emphasized the differences between the military and civilian societies and justice systems. *See, e.g.*, *Parker v. Levy*, 417 U.S. 733, 743-44 (1974); *Weiss*, 510 U.S. at 174-75; *Toth*, 350 U.S. at 17-20. Appellant offers no persuasive reason to upset those conclusions here.

Citing the Supreme Court's recent decision in *Ortiz v. United States*, 138 S. Ct. 2165 (2018), Appellant argues that servicemember and civilian defendants are similarly situated based on the similarities between the military and civilian justice systems. It is true that in *Ortiz* the Supreme Court described the military justice system's essential character as "judicial," and noted that the procedural

protections afforded to military defendants are " 'virtually the same' " as those provided to civilian criminal defendants. *Id.* at 2174 (quoting 1 David A. Schlueter, *Military Criminal Justice: Practice and Procedure* § 1-7, at 50 (9th ed. 2015)). But we are not persuaded that the Supreme Court intended to suggest that military and civilian defendants are similarly situated for equal protection purposes. Instead, we agree with the United States Army Court of Criminal Appeals that, "[t]o the extent there are similarities between the two systems, it is because Congress, in its discretion, struck a balance between the interests of justice and the distinct purposes of the military, not because accused service members and civilians are alike before the law." *United States v. Pritchard*, 82 M.J. 686, 692-93 (A. Ct. Crim. App. 2022) (first citing *Weiss*, 510 U.S. at 177; and then citing *Middendorf*, 425 U.S. at 46).

Two groups are similarly situated if they are " 'in all relevant respects alike.' " *Begani*, 81 M.J. at 280 (quoting *Nordlinger*, 505 U.S. at 10). We acknowledge that Congress has—over time—amended the UCMJ to make the military justice system more like civilian courts. *See Weiss*, 510 U.S. at 174 ("By enacting the Uniform Code of Military Justice in 1950, and through subsequent statutory changes, Congress has gradually changed the system of military justice so that it has come to more closely resemble the civilian system."). But Congress's efforts to close the gap between the two systems does nothing to make us question our decision in *Akbar* that an accused servicemember is not similarly situated to a civilian defendant. *Akbar*, 74 M.J. at 406. As the Supreme Court recognized in *Parker*, "[t]he differences between the military and civilian communities result from the fact that 'it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise.' " 417 U.S. at 743 (quoting *Toth*, 350 U.S. at 17). That primary business does not disappear when a servicemember is charged with a crime, and it prevents servicemember and civilian defendants from being " 'in all relevant respects alike.' " *Begani*, 81 M.J. at 280 (quoting *Nordlinger*, 505 U.S. at 10). Moreover, the three principal

differences between the systems that so troubled the Supreme Court in cases like *Toth, Reid*, and *O'Callahan* still remain true today: servicemembers facing courts-martial still have no constitutional right to: (1) a trial by jury; (2) before an independent Article III judge; (3) after an indictment by a grand jury. The similarities in the two criminal systems do not render servicemember and civilian defendants similarly situated.

Even if Appellant were similarly situated to a civilian criminal defendant, he has no fundamental right to a unanimous verdict in the military justice system, and he does not argue that servicemembers are a protected class. Accordingly, Article 52, UCMJ, could only violate Appellant's equal protection rights if Congress's disparate treatment of servicemembers serves no legitimate government purpose. *Heller v. Doe*, 509 U.S. 312, 319-20 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."). Under rational basis review, we must presume that Article 52, UCMJ, is constitutional and the burden falls on Appellant to rebut " 'every conceivable basis which might support it.' " *Id.* at 320 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

The Government asserts that nonunanimous verdicts in the military are necessary to promote efficiency in the military justice system and to guard against unlawful command influence in the deliberation room. Appellant characterizes these arguments as strawmen and argues that the military could "legitimately proceed" with unanimous verdicts. Brief for Appellant at 44, *United States v. Anderson*. But especially considering the deference that Congress is owed with respect to national defense and military affairs, *Rostker*, 453 U.S. at 64, Appellant's responses do not rebut the presumption that Congress had a rational basis for enacting Article 52, UCMJ. The Government's justifications for nonunanimous verdicts in courts-martial are rationally related to legitimate state interests and do not violate Appellant's Fifth Amendment right to equal protection.

### III. Conclusion

Appellant did not have a right to a unanimous verdict at his court-martial under the Sixth Amendment, Fifth Amendment due process, or Fifth Amendment equal protection. Accordingly, we affirm the judgment of the United States Air Force Court of Criminal Appeals.